FIRST NATIONAL BANK OF NEW HAVEN, *vs.* HENRY A. BALCOM AND ANOTHER.

*L*, who had a native domicil in the state of New York, removed to and became domiciled in *B* in this state. Afterwards he left this state, not intending to return, but with no fixed purpose as to where he should make his home. He went to *G* in the state of New York, and remained there about three months, when his wife died, upon which he went to *W* in this state, where he fixed his residence and soon after died. His residence in *G* was mainly on account of his wife's health, and he never while there decided to remain. Held that the domicil of his wife at the time of her death was in *B* in this state.

A native domicil, where superseded by an acquired one under the same national jurisdiction, does not revive by the mere abandonment of the latter and an unexecuted purpose to return to the former, but can be recovered only in the same way that a new domicil would be acquired.

A decree of a court of probate in this state granting administration on property here and finding that the intestate resided in the state of New York, is not conclusive on the subject of the residence.

A wife in rapidly failing health, and a few days before her death, signed a letter drawn up by her husband, addressed to a bank in which she had funds, stating that her health was so much worse that she feared she might not be able to draw for money when needed, and requesting to have all funds standing in her name transferred to that of her husband; to which her husband added that his wife was very ill and would be in need of money from time to time. Held that a *donatio causâ mortis* could not have been intended.

BILL of interpleader, brought to the Superior Court in New Haven County, against Henry A. Balcom, administrator upon the estate of Abby M. Lewin, and Luzon B. Morris, administrator upon the estate of Frederick D. Lewin, her husband, praying that the respondents might interplead and have adjudicated their respective rights to certain bonds, formerly the property of the said Abby, which were held by the plaintiffs and to which each of the respondents made claim. The respondents filed answers respectively, and the case was referred to a committee, who made the following report of the facts in the case.

Frederick D. Lewin was born in Johnsbury, in the state of New York, in the year 1834, where his parents then resided.

His father, who was an alien born, has continued to reside in the state of New York to the present time. Leaving that place in his childhood he subsequently resided, by successive changes of residence, in various states and places, until June 5th, 1861, when being then temporarily resident in Middletown in this state, he there married Abby M. Eddy, the person specified in the petition as Abby M. Lewin. He derived no support from his father after about the age of fourteen years. Immediately after their marriage Mr. Lewin and his wife took up their residence in the state of Missouri. In the spring of 1862 they changed their residence to Bethel in this state, where they continued to reside until 1864. Then abandoning that residence they removed, after a short stay at Middletown, to Branford in this state, where Mr. Lewin took up his residence in the summer or fall of 1864, and became rector of a church in that town.

In July, 1865, while Mr. Lewin and his wife were residing in Branford, a brother of his wife died, and subsequently, while they were still residing in Branford, she, Abby, received from the estate of her brother, by bequest from him, the sum of three thousand dollars, as her own proper estate; which sum she deposited personally in the First National Bank of New Haven, on the 7th day of March, 1866, directing that the same should be entered to her credit upon the books of the bank; whereupon that amount was credited to her, in her own name by the bank.

On the 23d day of April, 1866, she personally directed the bank to invest a portion of the fund in bonds of the United States to the amount (not including premium) of $2,500; and thereupon, in obedience to her directions, the bank purchased such bonds, expending of said fund in the purchase thereof (including premium) $2,625. The bank regarded the bonds, at the time of the purchase, as her property, and set them aside in an envelope marked "U. S. Bonds, property of Mrs. Abby M. Lewin," and received no directions from Mr. Lewin and knew nothing of him, so far as the bonds were concerned, at that time.

Shortly after the purchase of the bonds, and about the 1st day of May, 1866, Mr. Lewin and his wife left Branford and went to Geneseo in the state of New York, where both of them remained until her death, which occurred on the 25th day of July, 1866. She died intestate and without issue.

Mr. Lewin left Branford with intent to abandon his residence at that place, and with no intention of returning there. He did not go to Geneseo with intent to adopt that place as a place of permanent residence. He and his wife being then in feeble health, he went with her to Geneseo for the purpose of spending the summer there in the house of his brother-in-law, in the hope that the health of himself and wife might be benefited by the change of air and by the use of the water of certain mineral springs near Geneseo. At the time when he left Branford, and from that time until the death of his wife, he had no definite intentions in regard to the selection of any place as the place of his future residence. So far as he had any sort of intention on the subject, it was, during the whole time, an intention conditional and uncertain, whereby all decision in his mind upon the question was left in abeyance, to be determined in the future by the turn which his wife's disease might take, and by other circumstances which might or might not arise.

About the 1st of August, 1866, Mr. Lewin left Geneseo and went to Windham, in this state. It does not appear, and is not found, that at that time he had decided in his own mind where he would take up his residence; but during his subsequent stay at Windham he did make up his mind upon the subject, and determined upon Windham as the place of his residence,—regarding it as his home and making preparations to go into business there. On the 3d day of January, 1867, he died at Windham, intestate and without issue, being then, and having for some time previously been, resident and domiciled at Windham. He was buried at Geneseo at his request.

While Mrs. Lewin was living at Geneseo she drew from

VOL. XXXV.—45

the bank, without any intervention of her husband, sums amounting in all to $400,—the last of which sums was paid to her on the 14th day of July, 1866.

On the 23d of July, 1866, Mr. Lewin sent to the president of the bank a letter, enclosing another letter, both of which are given below. They were both written by him, except that the signature of the enclosed letter was subscribed by Mrs. Lewin with her own hand. She was then in a very feeble condition and was near her death, but, in the absence of all satisfactory proof to the contrary, it appeared, and is therefore hereby found, that she was intelligently aware of the contents of the letter when she so signed it, and that her signature was her own free act. The letters were as follows:

"Geneseo, July 23d, 1866. Hon. H. M. WELCH, Dear Sir. I inclose a note from Mrs. Lewin with regard to transferring her account at bank from her name to mine. She is very ill indeed and will be *in need of* money from time to time. By slow degrees she managed to complete her short note, with a feeble, trembling hand. Please send the balance of which you speak at once, and *sell* one of the bonds. Mrs. Lewin is so very low, and is such a sufferer, that I am very much alarmed for the result. Please let me hear from you at your earliest convenience. Direct to "Rev. F. D. Lewin." With many thanks for your kindness I am, Very truly yours,

F. D. LEWIN."

"Geneseo, July 23d, 1866. Hon. H. M. WELCH, Dear Sir. My health is so much worse that I fear I may not be able to draw for money when needed. I desire therefore to have whatever bonds or money there may be in my name transferred to that of my husband, Rev. F. D. Lewin, and you are hereby authorized and requested to make such transfer. Many thanks for your kindness. I trust that this is all that is necessary legally. Yours truly, ABBIE M. LEWIN."

In obedience to the directions of these letters, the bank, on the 28th day of July, 1866, sold one of the bonds and remitted the proceeds thereof to Mr. Lewin; and subsequently, in obedience to directions received from him, sold some of the

bonds, from time to time, and remitted to him the proceeds thereof; so that, on the first day of November, 1866, the balance of the original fund remaining in the hands of the bank, consisted of two bonds of the United States, one for $1,000 and one for $500, which the bank has ever since held, and still holds awaiting the result of the present suit.

At various times after the death of his wife, Mr. Lewin, in conversation with persons related to his wife by marriage, disclaimed all right to use the fund except for the purpose of defraying his wife's funeral expenses and erecting a monument to her memory; but he did, nevertheless, in fact, from time to time after his wife's death, draw upon the fund to an amount exceeding $1,000, the principal part of which amount he did not use for the purpose of defraying her funeral expenses and for a monument, but for his own personal purposes.

At all times prior to the receipt of the two letters above mentioned the bank received and obeyed, in reference to the fund, the orders of Mrs. Lewin only; and afterwards, until the death of Mr. Lewin, received and obeyed, implicitly, his orders in relation thereto.

On the 30th day of March, 1867, William Lewin, of Buffalo, in the state of New York, father of said Frederick, took out letters of administration upon his estate, in due form of law in the surrogate's court for the county of Livingston, in that state, within which county Geneseo is situated.

On the 17th day of April, 1867, letters of administration were issued by the court of probate for the district of New Haven, upon the estate of said Frederick, to Luzon B. Morris, respondent, and on the 6th day of February, 1867, letters of administration were issued by said last named court to Henry A. Balcom, respondent, upon the estate of said Abby, the decree in each case describing the intestate as late of Geneseo in the state of New York and as having property in this state within the jurisdiction of the court.

Upon these facts the case was reserved for the advice of this court.

*C. R. Ingersoll,* for the respondent, Balcom.

*Morris,* for himself.

Park, J.   The principal question in this case is in regard to the domicil of Mrs. Lewin at the time of her death.   She died in the state of New York, and the administrator of her estate claims that her domicil at the time was in Connecticut ; while the administrator of the estate of her husband claims that it was in the state of New York.

It appears by the finding of the court that her husband was a native of the state of New York; that he married Mrs. Lewin while temporarily residing in Connecticut ; that immediately after their marriage they went to the state of Missouri, and resided there till the spring of 1862, when they returned to Connecticut, and after residing at various places in the state, became permanently located in the town of Branford.   While their domicil continued there, Mrs. Lewin received a bequest that had been left her by her brother. Sometime in the spring of 1866 Mr. Lewin and his wife left Branford with the intent to abandon his residence there, and went to Geneseo in the state of New York, where he remained till the death of his wife, which occurred in the month of July of the same year.

The character of Mr. Lewin's residence at Geneseo is thus described in the report of the committee.   "He did not go to Geneseo with the intent to adopt that place as a place of permanent residence.   He and his wife, being in feeble health, went to Geneseo for the purpose of spending the summer there in the house of his brother-in-law, in the hope that the health of himself and wife might be benefited by the change of air, and by the use of the water of certain mineral springs near Geneseo.   From the time he left Branford until the death of his wife he had no definite intentions in regard to the selection of any place as the place of his future residence. So far as he had any intention on the subject it was, during the whole period of time, an intention conditional and uncertain, whereby all decision in his mind upon the question was

left in abeyance, to be determined in the future by the turn which his wife's disease might take, and by other circumstances which might or might not arise. "

In the month of August of the same year he left Geneseo and returned to Connecticut, and not long afterwards became permanently settled in the town of Windham.    These facts render it apparently clear that Mr. Lewin was not domiciled in the state of New York at the time his wife died.

But it is claimed that, inasmuch as he was a native of the state of New York, and inasmuch as he left Branford with no intention of returning to that place to reside, and went to the state of New York, and remained there, in fact, for a time, no matter what the character of his abiding may have been, he became domiciled there, on the principle that a native domicil easily reverts.    Would it be claimed that if Mr. Lewin had left Branford with the intent to take up his residence in the state of Ohio, and on his way sojourned a few days in the state of New York, that would be sufficient ? And what real difference is there between that case and the present ?    In both cases Mr. Lewin had no intention of permanently remaining in the state of New York.    All the difference there is consists in the fact, that in one case his mind is made up in regard to his future residence and in the other it is not.    His abiding in both cases is temporary.    We said in another case upon the present circuit, that a temporary residence did not change its character by mere lapse of time. Whether it is longer or shorter it is temporary still.    But the principle that a native domicil easily reverts applies only to cases where a native citizen of one country goes to reside in a foreign country, and there acquires a domicil by residence without renouncing his original allegiance.    In such cases his native domicil reverts as soon as he begins to execute an intention of returning ; that is, from the time that he puts himself in motion *bona fide* to quit the country *sine animo revertendi*, because the foreign domicil was merely adventitious, and *de facto*, and prevails only while actual and complete. *The Indian Chief*, 3 Rob. Adm. R., 17, 24; *The Venus*, 8 Cranch, 253, 280, 301; *The State* v. *Hallett*, 8 Ala., 159;

*Case of Miller's Estate,* 3 Rawle, 312, 319; *The Ann Green,* 1 Gall., 275, 286; *Catlin* v. *Gladding,* 4 Mason, 308; *Matter of Wrigley,* 8 Wend., 134, 140.

This principle has reference to a national domicil in its enlarged sense, and grows out of native allegiance or citizenship. It has no application when the question is between a native and acquired domicil, where both are under the same national jurisdiction. It was so held in the case of *Monroe* v. *Douglas,* 5 Maddock, 379. In that case the question was between the native domicil of a party in Scotland, and a domicil of residence acquired by the same party in India, and the Vice Chancelor said he could find no difference in principle between the original domicil of the party and the acquired one in India. See also 1 American Leading Cases, 742.

If this principle does not apply to the case in question, then it follows from this finding that Mr. Lewin had no domicil in the state of New York when his wife died, but his domicil at that time remained in the town of Branford, in accordance with the maxims that universally prevail in relation to this subject, that every person must have a domicil somewhere, that he can have but one domicil for one and the same purpose, and that a domicil once acquired continues until another is established. *Abington* v. *North Bridgewater,* 23 Pick., 170; *Thorndike* v. *City of Boston,* 1 Met., 242; *Crawford* v. *Wilson,* 4 Barb., 504; *Rue High, Appellant,* 2 Doug. (Mich.) 515; *Somerville* v. *Lord Somerville,* 5 Vesey, 750; *Greene* v. *Greene,* 11 Pick., 410; *Walker* v. *Bank of Circleville,* 15 Ohio, 288.

It is claimed further, that the bonds in question became the property of Mr. Lewin by *donatio causa mortis.* But it is clear that no gift was intended by Mrs. Lewin, as plainly appears by her letter to the officers of the bank, and besides, a gift of this nature must be made in contemplation of the approach of death and must be given to take effect only in case the donor dies. *Raymond* v. *Sellick,* 10 Conn., 480. Nothing of this kind appears in the case.

Again, it is claimed that the court of probate for the district of New Haven granted letters of administration on the

estate of Mr. Lewin as domiciled in the state of New York; and it is insisted that this is conclusive on the subject. But the judgment of a court of limited jurisdiction is never conclusive of a jurisdictional question. Its jurisdiction may always be controverted. *Sears* v. *Terry*, 26 Conn., 273; *Jochumsen* v. *Suffolk Savings Bank*, 3 Allen, 87; 2 Redfield on Wills, 49.

We advise the Superior Court that the administrator of the estate of Mrs. Lewin is entitled to the property. .

In this opinion the other judges concurred.