CASE 22—PETITION EQUITY—OCTOBER 14.

## Allen, &c., v. Russell, &c.
## Marchand, &c., v. Russell, &c.

### APPEAL FROM TAYLOR CIRCUIT COURT.

1. The plaintiffs sued jointly, and they jointly excepted to the depositions of J. H. Allen and E. C. Sublett, who had given their depositions on behalf of their wives respectively. If this evidence was competent against any one of the plaintiffs, it was competent as to all of them.

2. The depositions were taken in 1874, and the General Statutes then in force govern the competency of the evidence.

3. Two of the plaintiffs were over twenty-one years of age; another was an infant, and the matters to which the witnesses testify occurred after the death of the decedent, J. F. Bridgewater.

4. *Held*, that the husbands of the female defendants were competent witnesses under section 24 and subsection 1 of section 25, General Statutes.

5. J. H. Allen having used a note held by him, as guardian of Mrs. Marchand, in part payment for property purchased by him, and exchanged for a house and lots in Lebanon, the title to which, at his instance, having been conveyed to his wife—*Held*, that Mrs. M. has a lien upon the house and lot for the payment of the amount of the note.

6. So long as a trust fund can be distinctly traced, the chancellor will fasten upon it, and apply it to the purpose to which it should have been applied, unless the rights of innocent third parties have intervened.

7. Mrs. Sublett, with her husband, cannot rely upon the statute of limitations, because of the infancy of a part of the plaintiffs. (Section 3, art. 4, chap. 63, Revised Statutes.)

Ky.
78  105
99  215

78  105
103  464

78  105
108  388

78  105
110  775

78  105
117  238

78  105
122  768

Kentucky
78  105
128  207

8. But as the fraud is only constructive, Mrs. S. is entitled to her lien upon the property conveyed to her as security for the money invested by her in it, the balance of its proceeds to go to the creditors of her husband.

9. The compensation allowed to Russell & Averitt held to be reasonable.

10. The fund attached in the hands of Bowman, being compensation due to Allen from the Commonwealth for teaching a common school, is not subject to attachment. The Commonwealth cannot permit the wages of teachers of common schools to be intercepted with the result of depriving the State of their services.

MESSRS. W. B. HARRISON, WINFREY & WINFREY FOR ALLEN AND WIFE.

1. The conveyance to Mrs. Allen is neither actually nor constructively fraudulent. She was entitled to nearly if not quite as much as paid for the house and lots in Lebanon from the estate of her father.

2. Although a note held by J. H. Allen. as guardian of Louella Bridgewater, may have been used by him in part payment for land which was exchanged for the house and lots in Lebanon, the paper is not found in this suit. She has no lien upon the lots for her demand.

3. The Revised Statutes, sections 2 and 3, chapter 40, have no application to this case, because Allen never owned the lots, nor has he attempted. to make any conveyance thereof.

4. Allen had the right to decline to convert his wife's share in her father's. estate to his own use.  (Simms v. Spalding, 2 Duvall; 2 Bush, 535.)

RUSSELL & AVERITT FOR A. R. RUSSELL AND WIFE.

W. S. BRIDGEWATER FOR THEMSELVES AND LOUELLA MARCHAND. AGAINST SUBLETT, &c.

1. J. H. Allen is not a competent witness.  (Vol. 1, Acts of 1871-2, page 12.)

2. We insist that the Circuit Court properly subjected to sale the house and lots in Lebanon to pay the debt of $700 due to Louella Marchand, and then to satisfy the claims of J. F. Bridgewater's heirs against. Allen as his administrator. The conveyance to Mrs. Allen was fraudulent. Bridgewater's estate to that extent is represented by the house and lots in controversy.  (Rev. Stat., chap. 80, secs. 20, 21, and 22.)

ALEXANDER, BAKER & READ, AND DICKINSON FOR MARCHAND, AND WIFE.

1. The conveyance to Mrs. Sublett of the tract of land in controversy is. fraudulent as to Marchand and wife. Sublett was surety upon the bond of Bridgewater's administrators when he paid for the land and caused it to be conveyed to his wife.  (3 J. J. Marshall, 290; Lyne v. Bank of Ky., 5 J. J. Marshall; 9 B. Mon., 514; 2 Bibb, 381; 4 Dana,.

251; 1 Met., 350; 2 Met., 206; Revised Statutes, chap. 40, sec. 2;. Gen. Stat., 44; 2 Bush, 75; 3 Bush, 215; 8 Bush, 533; Kerr on Frauds, 203; Story's Eq., vol. —, sec. 355; Ibid, vol. 2, chap. 32, sec. 1210.)

2. The allowance to Russell & Averitt is exorbitant.
3. The school fund attached in the hands of Bowman should be appropriated to appellant's debt.

WINFREY & WINFREY FOR SUBLETT AND WIFE.
1. The conveyance to Mrs Sublett is valid.   When it was made there was. no debt existing against her husband, but only a remote contingent. liability.
2. The statute in regard to fraudulent conveyances does not apply to this. case.   (Doyle v. Sleeper, 1 Dana, 531; Crozier v. Young, 3 Mon., 157; Marshall v. Marshall, 2 Bush, 415.)

RUSSELL & AVERITT FOR RUSSELL, &C.
The allowance to Russell & Averitt was reasonable.   The amount was. agreed upon between them and the guardian of Mrs. Marchand. `

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

August 4, 1864, Jo. H. Allen and P. H. Bridgewater qualified as administrators of the estate of J. F. Bridgewater. The former is a son-in-law and the latter a son of the intestate.

At the August term, 1872, of the Adair Circuit Court, three of the distributees of the estate, viz: Laura Russell. and her husband, and W. S. and Louella Bridgewater, by their curator, recovered judgments against the administrators and their sureties for balances of their distributive shares, and caused executions to issue thereon, which were returned "no property found."   They then instituted this proceeding, by an amended petition filed without objection in the case in which the judgments were obtained, to enforce satisfaction of the judgments.

They sought, among other things, to subject a house and two lots, situated in the town of Lebanon, the title to which. was in Mrs. Allen, the wife of Jo. H. Allen, and daughter of

the intestate, and a tract of land, situated in Adair county, the title to which was in Mrs. Sophia Sublett, wife of E. C. Sublett, one of the sureties on the administrators' bond and a defendant in the judgments.

In respect to the house and lots, the plaintiffs allege, in substance, that Jo. H. Allen purchased a tract of land in Adair county, and paid $700 of the purchase money in a note he held, payable to himself, as guardian of Louella Bridgewater, and that he paid the residue out of assets in his hands, as administrator of J. F. Bridgewater; that he afterward conveyed the land to Funk, in exchange for the house and lots, and that said "conveyance is voluntarily and fraudulent as to them," they being antecedent creditors.

These allegations, except that of fraud, are established by the evidence.

The allegations affecting Mrs. Sublett are, that subsequent to the execution of the administrators' bond by her husband, as a surety thereon he bought the land and paid for it, and, in fraud of the plaintiffs' rights, caused it to be conveyed to his wife; that "it was a voluntary conveyance, made after the execution of the administrators' bond."

These allegations were denied by Sublett and wife, but with this explanatory statement:

That Mrs. Sublett was, in her own right, the owner of $730 in gold, and had the exclusive possession of it, and it was not subject to her husband's debts, and was not in his possession or under his control; that at her request it was sold for $1,538 in "greenbacks;" that she also owned $300 in paper money, which was her share of her father's estate, and that, at her request, it was invested in the land; that her husband agreed that if she would so invest her money, he would pay the balance, between eleven and twelve hun-

dred dollars, and have the land conveyed to her.   She also
pleaded and relied upon the statute of limitations of five
years.

The chancellor adjudged the house and lots in Lebanon
to be sold to pay to Louella the sum of $700, the amount of
the note payable to Allen as her guardian, which he used to
pay a part of the purchase money for the land swapped to
Funk for the house and lots, and that the residue of the
price for which it should sell should be applied, *pro rata*, in
payment of the judgments.

The petition was dismissed as to Mrs. Sublett.

From so much of the judgment as subjected the house
and lots to sale, Allen and wife appeal, and from so much as
dismissed the petition as to Sublett and wife, Louella, now
Mrs. Marchand, and her husband have appealed.

The depositions of Jo. H. Allen and E. C. Sublett were
taken on behalf of their respective wives, and exceptions to
them having been overruled, the first question for decision is,
whether they were competent witnesses.

The plaintiffs sued jointly, and filed joint exceptions to
the depositions; and if the witnesses were competent as to any
one of the plaintiffs, they were competent as to all.   (Worth-
ley v. Hammond, 13 Bush, 452.)

The depositions were taken in 1874.   The General Stat-
utes were then in force, and the competency of witnesses
was regulated by sections 22 to 28, inclusive, of chapter 37.
W. S. Bridgewater and Mrs. Russell, two of the plaintiffs,
were over the age of twenty-one years.   Louella, now Mrs.
Marchand, was an infant.   The facts testified to occurred
after the death of J. F. Bridgewater, and the husbands of
the female defendants were competent witnesses under sec-
tion 24 and subsection 1 of section 25.

We are therefore of the opinion that the court did not err in overruling the exceptions to the depositions. In regard to the conveyance from Funk to Mrs. Allen, it is to be remarked that it is not attacked for actual fraud, but as voluntary, and, therefore, fraudulent under the statute against fraudulent conveyances, and upon the additional ground that the land conveyed to Funk, in exchange for the house and lots, was paid for with assets of the estate of J. F. Bridgewater and a note payable to Allen as guardian to Louella Bridgewater.

There is no evidence of any actual fraud on the part of Allen in procuring the house and lots to be conveyed to his wife. The deed bears date in 1867. In January, 1866, the administrators made a partial settlement of their accounts, in which it appeared that the amount for distribution between the five distributees was $27,032 44, or $5,406 48 to each share.

Of this sum, the settlement purports to show that Mrs. Allen had received the sum of $3,909 20, or $1,497 28 less than her share; and there was filed with the settlement a receipt purporting to have been executed by her and her husband for the sum of $3,782 40 paid to them by him as one of the administrators. There is nothing to show that any part of this sum was paid to Mrs. Allen, or whether the charge in the settlement or the receipt was intended to be an appropriation by the husband of that much of his wife's distributive share of her father's estate; but for the purposes of this case we assume that such was his purpose. This would leave still due to Mrs. Allen, as the settlement then stood, $1,497 28.

A suit to surcharge the administrators' settlement resulted in increasing their liability in the sum of $4,300 over what

it appeared to be on the settlements made with the county judge. Add Mrs. Allen's share of this, $860, to that remaining due on the settlement, and the administrators were indebted to her, at the date of the deed to her for the house and lots, in the sum of $2,357 28, nearly the value of the property conveyed to her. The administrators executed a joint bond, and each was liable for the whole amount in the hands of both. Allen was therefore indebted to his wife in a sum not more than $150 less than the price paid for the house and lot. That sum the chancellor, if applied to by Mrs. Allen, would have required him to secure to her, and if he had paid for the property with his own money, there could be no doubt but the conveyance would have been valid as against his creditor. Whatever the chancellor would have required to be done, he will not undo when voluntarily done.

What, then, is the result, as to Mrs. Allen, of the fact that a part of the price of the land exchanged for the house and lots was paid with assets in his hands as administrator? That such use of the assets was a breach of trust may be conceded, but the breach consisted in taking the title to himself. If, instead of doing so, he had taken the title to the land to his wife, the act of paying for it with assets belonging to the estate would not have been *per se* wrong. He owed her a fiduciary debt, and he would thus have paid the debt with fiduciary funds; and unless his purpose in doing so was to defraud the other distributees, they would have had no right to complain. Having taken the title to the land to himself, it was, in equity, assets in his hands, and might have been reached by the distributees and recovered by them, or subjected to sale for distribution. But before any step had been taken for that purpose, he exchanged the

land for the house and lots and caused them to be conveyed to his wife, thereby accomplishing in the end just what we have seen he might have legally done in the first instance.

At the time the conveyance was made to Mrs. Allen, her husband and P. H. Bridgewater, the other administrator, and their sureties were solvent, and the estate was then in their hands intact, except so far as it had been distributed. In causing the lots to be conveyed to Mrs. Allen, thereby satisfying so much of her claim against him, he did the other distributees no wrong. The wrong they have suffered does not proceed from that cause. He remained amply able to pay the others also, and his sureties were ample; and that which was right when done cannot be made wrong by subsequent events not then contemplated by any one. The wrong done the others consists in the failure to pay them, and not in the fact that he paid his wife.

We are therefore of the opinion that the house and lots cannot be subjected, because they were paid for with assets in the hands of Allen as administrator.

But as to the amount of the note payable to Allen as guardian for Louella, now Mrs. Marchand, we are of the opinion that she has a lien on the property. She has traced the proceeds of the note into it, and the well-settled rule is, that as long as a trust fund can be distinctly traced, the chancellor will fasten upon it and apply it to the purpose to which it ought to have been applied, unless the rights of innocent third persons have intervened. Mrs. Allen had a debt against her husband, and he paid it with property purchased in part with a note belonging to Mrs. Marchand. To that Mrs. Allen had no claim, either legal or equitable. Mrs. Marchand had a right, as long as the land belonged to Allen, to proceed against it for the amount of her note put into it.

To that extent she had an interest in the land, and that interest was destroyed by the conveyance to Funk, and went into the house and lots to pay that much of Allen's debt to his wife. Mrs. Marchand cannot proceed against the land, because it has passed into the hands of a purchaser for value, who, as far as appears, had no notice of her equity. But Mrs. Allen was merely a creditor of her husband. She did not pay for the land as a purchaser in the sense which entitles her to protection against the prior equity of Mrs. Marchand, and besides, she does not lay a foundation for asserting her claim as a purchaser: does not allege that she took the house and lots without notice of the fact that the proceeds of the note went into them. Such a defense is affirmative in its character, and must be pleaded.

The house and lots having been conveyed to Mrs. Allen on account of her husband's indebtedness to her, it was in no sense a gift by him to her. If he had on the same account conveyed the land to her which he conveyed to Funk in exchange for the lots, the conveyance not being tainted with actual fraud, could not have been successfully assailed as voluntary, and would have been valid as against pre-existing liabilities.

The deed to Mrs. Sublett was executed in February, 1865, and the suit attacking it as voluntary, and therefore fraudulent, was not commenced until August, 1873, a period of nearly eight years thereafter.

The limitation prescribed to such actions by the Revised Statutes, in force when this action was commenced, and when the cause of action accrued (which is the same as is prescribed by the General Statutes), was five years. (Section 2, art. 3, chapter 63, R. S.)

But section 5, same article, provided that in actions for relief for fraud, the cause of action should not be deemed to have accrued until the discovery of the fraud, but that no such action should be brought ten years after the time of the perpetration of the fraud.

It is averred in the answer, that if any fraud existed in the conveyance, it was discovered by the plaintiffs more than five years before the commencement of the suit. But it appears from the record that, at the time the deed was made, Mrs. Russell, W. S. Bridgewater, and Mrs. Marchand were infants, and there is nothing in the record showing when they attained their majority.

. It was provided by section 3, article 4, chapter 63, Revised Statutes, that if any person entitled to bring any of the actions mentioned in article 3 (of which an action for relief against fraud is one), except an action for a penalty or forfeiture, was an infant at the time the cause of action accrued, the action might be brought in a like number of years after such person attained his majority that was allowed to a person under no such disability to bring the same after the right accrued. ·

As it does not appear that five years elapsed after any one of the plaintiffs to whom the cause of action accrued attained majority five years before this suit was commenced, the statute presents no obstacle to a recovery.

It is next contended, on the authority of Crozier v. Young, 3 Monroe; Doyle v. Sleeper, 1 Dana, and Marshall v. Marshall, 2 Bush, that, even conceding that the purchase money for the land conveyed to Mrs. Sublett was paid by her husband after he signed the bond as surety for the administrators, the deed is not fraudulent as to the distributees having

judgment and return of *nulla bona* against the administrators and their sureties.

Section 2 of chapter 40, Revised Statutes, provided that "'every gift, conveyance, assignment, transfer, or charge, made by a debtor upon any of his estate, without valuable consideration therefor, shall be void as to his then existing liabilities," &c.

In the first two of the above cited cases it was held, under the act of 1796 (1 M. & B., 737), that property purchased and paid for by a debtor, and by his direction conveyed to his children, could not be subjected to the payment of his debts.   This was held on the ground that the statute only applied to conveyances *by* the debtor, and not to conveyances made by third persons by his procurement; and in the latter case these cases were referred to upon this point with approval; but the question was not necessary to the decision of the case before the Court.

Whether those cases did not kill the spirit of the law with its letter we need not now inquire.   The question has been set at rest by the legislature.

Sections 20 and 21, chapter 80, of the Revised Statutes, read as follows:

20.  "When a deed shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the latter."

21.  "Such deeds shall be deemed fraudulent, as against the existing debts and liabilities of the person paying the consideration."

If the purchase money for the land conveyed to Mrs. Sublett was paid by her husband, the case comes directly within the statute, and the deed must be adjudged fraudulent, as against his then existing liability as surety for the adminis-

trators of Bridgewater's estate.    That $1,164 of the price
of the land was paid by the husband is conceded.    As to
the residue, we think, without repeating it, the evidence
shows was paid with money belonging to Mrs. Sublett.

. There is no evidence whatever of actual fraud on the part
of either Mrs. Sublett or her husband.    It is not even
charged, and she is therefore entitled to the benefit of the
rule which gives to a purchaser, innocent of willful fraud and
guilty only of a legal fraud, the right to be reimbursed for
the money actually paid out in the transaction.    In other
words, she will be allowed to resort to the land as a security
for her money invested in it, and the appellants, Marchand
and wife, will be entitled to the residue, not exceeding the
amount of the liability of her husband as surety for the ad-
ministrators.    But she will not be entitled to interest except
from the date when she and her husband may be dispos-
sessed under the judgment herein directed to be rendered.

The compensation allowed Russell & Averitt seems to be
no more than that agreed upon by the then guardian of Mrs.
Marchand, and, in view of the labor and skill required, we
are of the opinion that the allowance was not unreasonable
even if no agreement had been made. .

The fund attached in the hands of Bowman, being com-
pensation due to Allen from the Commonwealth for teaching
a common school, was not subject to attachment.    Officers
of the State, intrusted with the funds of the State for public
purposes, are not subject to garnishment, nor can the com-
pensation of a teacher employed in the service of the public
in teaching a common school be attached.    The Common-
wealth has undertaken to establish and carry on at public
expense a system of common schools, and cannot permit
the wages of teachers in such schools to be intercepted,

whereby it may be deprived of their services, and the efficiency of the system may be impaired.

The judgment to sell the house and lots in Lebanon, and the judgment dismissing the petition against Sublett and wife, are reversed (the latter is reversed only as to Marchand and wife), and the cause is remanded for judgments in conformity to this opinion. In all other particulars the judgments are affirmed.