CASE 89—ACTION BY B. B. LANCASTER AGAINST THE ADM'R AND HEIRS AT LAW OF GEORGE PEARCE, DECEASED—MAY 7.

## Lancaster v. Wolff, &c.

APPEAL FROM NELSON CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS.    REVERSED.

PARTIES TO ACTIONS—LIABILITY OF HEIR WHO HAS SOLD ESTATE DESCENDED—VENUE—WAIVER OF LIEN ON PROPERTY SOLD—LIEN ON PROCEEDS.

Held:  1. Under Kentucky Statute, sec. 2087, providing that, "when the heir or devisee shall alien before suit brought the estate descended or devised, he shall be liable for the value thereof, with legal interest from the time of alienation to the creditors of the decedent or testator," the administrator is not a necessary

Lancaster v. Wolff, &c.

party to an action to enforce the liability of the heir; and, where the administrator was joined with the heir, the court erred in refusing to permit plaintiff to dismiss as to the administrator, and in then sustaining a demurrer to the jurisdiction, and dismissing the action as to both defendants, because the administrator resided in another county.

2. Where the heir was a nonresident, the action to enforce his liability was properly brought in a county which was the residence of persons whose indebtedness to him was sought to be subjected by attachment to plaintiff's claim.

3. Where one of two joint owners of property who has a lien upon the interest of the other procures a sale of the property for partition, he may enforce his lien against the proceeds of the property, though he waived his lien upon the property by failing to assert it in the suit for partition.

4. In an action by one of two joint owners of property against the heirs of the other for a sale of the property for partition plaintiff became the purchaser, and in response to a rule against him to pay the purchase price, he asserted a lien upon his co-tenant's share of the proceeds. The court held the response insufficient, saying that the lien against "the property" was lost, and that plaintiff's remedy was against the administrator, like any other creditor. Held, that the judgment is not a bar to a separate action by plaintiff to subject the fund, the legal remedy being inadequate.

J. W. THOMAS AND HALSTEAD & YEWELL FOR APPELLANT.

W. P. LINCOLN & JOHN S. KELLY FOR APPELLEES.

(No briefs.)

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Appellant, R. B. Lancaster, in 1888, sold an undivided one-half of his distillery property in Nelson county to George Pearce and B. H. Hurt. They executed to him five notes for the purchase money. After two of the notes were paid, Pearce died; and Hurt resold his one-fourth of the property to Lancaster, and thus paid one-half of the three unpaid notes. Lancaster then filed suit in the Nelson Circuit Court against the heirs of Pearce to sell the property for the purpose of division. The property

was sold, and Lancaster purchased it. The sale was con-
firmed, and a rule was taken on Lancaster at a subsequent
term to pay into court the amount of the sale bonds
taken for the one-fourth interest of Pearce's heirs. In
response to this rule, he set up the balance of the three
unpaid purchase-money notes given to him by Pearce and
Hurt, and sought credit on the sale bonds for this amount.
The court below overruled a demurrer to this response,
but on appeal this court held the response bad, and direct-
ed the rule to be made absolute. Pearce v. Lancaster (Ky.)
49 S. W., 12. (20 Ky. L. R., 1218) Lancaster thereupon filed
this action in the Nelson Circuit Court against the adminis-
trator and heirs at law of Pearce, setting up the notes and
the facts above stated; also that the administrator had no
assets in his hands, and that the heirs were all non-resi
dents of the State. He obtained an attachment, which was
levied on the fund coming to the heirs from the sale of
the property. None of the defendants appeared, but the
garnishees appeared, and filed a demurrer to the jurisdic-
tion of the court, on the ground that the administrator
lived in Jefferson county. Lancaster then moved to dis-
miss his action as to the administrator. The court over-
ruled this motion, refused to allow an amended petition
to be filed, and dismissed the action. From this judgment
the appeal before us is prosecuted.

The amended petition offered by the plaintiff is not
made part of the record by order of court or bill of excep-
tions, and can not be considered. It remains, therefore,
to determine whether the original petition stated a cause
of action, within the jurisdiction of the court: The fund
sought to be attached was in Nelson county; the owners
of the fund were all non-residents of the State; the fund
was derived from the sale of the distillery property; and

the suit was brought to enforce the liability of the heir
for the debt of his ancestor, from whom he had received
the assets.   Section 75 of the Code of Practice provides
that, subject to certain exceptions, which do not apply,
"an action against a defendant who may be proceeded
against 'by a warning order, as is authorized by sec-
tion 57, must be brought in a county in which the de-
fendant resides at the commencement of the action; or
in which he has property; or in which a person resides
against whom he has a valid claim for money or prop-
erty."   Under this section, the Nelson Circuit Court had
jurisdiction of the action, unless the administrator was a
necessary party.   It is insisted that the action could
only be maintained against the administrator and heirs
jointly, and that, as the administrator resided in Jeffer-
son county, the suit should have been brought there.   The
lower court seems to have taken this view in refusing to
allow the action to be dismissed as to the administrator,
and in sustaining the ·demurrer to the jurisdiction of the
court.   The correctness of this ruling depends upon the
proper construction of the following ·statutes:  "The
same actions which lie against the personal representa-
tive, may be brought jointly against him and the heir or
devisee of the decedent or both, and shall not be delayed
for the nonage of either of the parties."   Kentucky Stat-
utes, section 2085.   "When the heir or devisee shall alien
before suit brought the estate descended or devised, he
shall be liable for the value thereof with legal interest
from the time of alienation to the creditors of the decedent
or testator; but the estate so aliened shall not be liable
to the creditors in the hands of a *bona fide* purchaser for
valuable consideration, unless action is instituted within
six months after the estate is devised or descended to sub-

ject the same." Section 2087. "The heir or devisee may be sued in equity for any liability of the decedent or testator, and he, the creditor, may also in such suit, if demanded, obtain by the proper procedure a lien on any specified property descended or devised not theretofore aliened, but not so as to prejudice thereby any other creditor." Section 2089. Proper force must be given to each of these provisions. Section 2085 provides for a joint action against the administrator and heir or devisee. This section is taken from the act of 1792, and puts the heir on precisely the same plane as the personal representative, so far as the action is concerned. A judgment against a personal representative must be levied of assets, and so must a judgment against the heir under this section. Section 2087 was intended to provide for a different state of case. If the heir had sold the estate descended to him, there would be nothing to levy the execution on which might issue on the judgment rendered in the action provided fior by section 2085, and so it was provided that in this case the heir should be directly liable to the creditor for the value of the property aliened, and this liability, like any other liability created by statute, may be enforced by a direct action against the party charged. Under this section, the administrator is not a necessary party, and a personal judgment may be rendered against the heir. Section 2089 provides for still another state of case. The heir might be in such a condition that a judgment against him, when finally obtained, would probably be valueless. To protect the creditor from loss in this state of case, and to protect the heir also from injustice, jurisdiction was conferred upon a court of equity to enforce the liability of the heir, and by proper procedure to create a lien on any specified property descended. It

will be observed that the two preceding sections do not
provide for equitable proceedings. The last section re-
quires the proceeding to be in equity, so that the chan-
cellor may see that equity is done. This section does not
provide for a joint action against the administrator and
heir. Its language is: "The heir or devisee may be sued
in equity for any liability of the decedent or testator."
In Hagan v. Patterson, 10 Bush, 441, this court, after
quoting these three sections, then numbered 6, 8, and 10,
said: "By section 6 a joint judgment may be had against
the personal representative and heirs or devisees, or both.
A judgment so obtained must, however, be levied of as-
sets in the hands of the personal representative, or of the
estate descended to the heir or devised to the devisee.
This section is but a re-enactment of the statute of 1792
(Morehead & B. St., 778), and under its provisions, just
as under those of the act of 1792, in order to proceed at
law against the heir or devisee, it is absolutely necessary
that the personal representative shall be joined as a de-
fendant. The heir or the devisee has the right to demand
that the debts of the decedent or testator shall be satis-
fied by the personal representative, if there be assets in
his hands sufficient for that purpose; and when sued at
law they can not have the benefit of this right, unless the
personal representative be also sued, and the judgment so
framed as to be first levied of the assets in his hands.
Conley's Heirs v. Boyle's Ex'rs, 6 T. B. Mon., 639." It
will be noticed that the court here speaks only of remedies
at law. In Rubel v. Bushnell, 91 Ky., 253, (15 S. W.,
520), the court, quoting the same statutes, said: "There
can be no question of the liability when the assets have
been received, nor is it material, under the present pro-
vision of the Code, that it should appear that the person-

al representative has no assets. The right to sue is expressly given the creditors, and the only question is, when the liability is conceded, has the distributee received assets from the estate? If so, he becomes liable to the creditor to that extent, and may be sued for the whole sum received, and required to look to his co-distributees for contribution, if he has received assets to the extent of the creditor's claim."

The heir here has aliened the property which he received from his ancestor. By reason of this alienation, he has become liable to the creditor for the value of the property, with legal interest from the time of alienation. This personal liability of the heir, if he resided in this State, might be enforced against him in the county in which he resided or was served. Being a non-resident of the State, the suit against him to enforce the liability may be brought in the county where the fund is. As it is immaterial whether the personal representative has assets or what other distributees may have received, none of these are necessary parties to the action. Conley's Heirs v. Boyle's Ex'rs, 6 T. B. Mon., 637, was decided under the act of 1792. Sections 2087 and 2089 were enacted after this decision was rendered. They were first embodied in the Revised Statutes passed in 1851. We therefore conclude that the court below erred in overruling appellant's motion to dismiss the action without prejudice, and in sustaining the special demurrer to the jurisdiction of the court.

Lancaster had a lien upon the one-fourth interest in the distillery owned by Pearce for the payment of Pearce's half of the balance of the purchase money due thereon. But, when Lancaster had the distillery sold without setting up his lien for purchase money, he lost his lien on

the property. Yet in equity the proceeds of the prop-
erty will be charged with the lien as between the original
parties, and this lien may be enforced. The fund in court
stands in the place of the property. While Lancaster
can not assert a lien against the property after 'the judic-
ial sale made at his instance, there is no reason why he
may not assert his lien against the proceeds of the prop-
erty in the hands of the heirs. The rule on this subject
is that the fund may be followed as long as it can be
clearly identified. The right would substantially be the
same if Pearce and Lancaster had jointly sold the prop-
erty to another, and Lancaster had then brought this
suit before the purchaser had paid for the property, and
sought to have his purchase-money notes paid out of the
amount due by the purchaser. 2 Story, Eq. Jur., 1219,
1258, 1259; 2 Pom. Eq. Jur., section 1051, and note; Allen
v. Russell, 78 Ky., 105; Steele's Adm'rs v. Gay (Ky.) 58 S.
W., 586 (22 Ky. L. R., 689).

It is insisted that this question was settled against Lan-
caster in the other case. Pearce v. Lancaster (Ky.) 49 S.
W., 12 (20 Ky. L. R., 1218). But no such question was
presented in that case. That action was for a sale of
the property for partition. The question of Lan-
caster's right to enforce his notes could not be
set up in that action by an amendment of the
pleadings after final judgment, or by a response to a
rule for the payment of the purchase money. This court
said, speaking of the judgment: "The only question re-
served by that judgment was the rights of appellants
between themselves in the division of that fund as heirs
of George Pearce." What follows in the opinion was only
stated to show that the question proposed to be raised
could not be tried in that suit. In saying that, if the es-
tate of Pearce was indebted to Lancaster, his remedy was

against the administrator, like any other creditor, and
that the lien against the distillery property was lost, the
court was only disposing of the response to the rule.
The action had accomplished its purposes. The distillery
property was the only thing in litigation in it. No ques-
tion was presented as to the right of Lancaster to extra-
ordinary remedies in equity, on proper averments under
the statute in another action, or of his right to follow
the fund by an appropriate proceeding. The court, in
referring to the ordinary legal remedy, did not pass on
the right, under the requisite showing, to extraordinary
equitable remedies, when the legal remedy might be inade-
quate. The court had nothing before it to present these
questions, and its language must be referred to the case
before it. Judgment reversed, and cause remanded, with
directions to overrule the demurrer to the petition, and
to sustain the motion to dismiss the action against the
administrator, and for further proceedings not inconsist-
ent with this opinion.