## Taylor's Executrix v. Jefferson.

(Decided December 17, 1915.)

### Appeal from Todd Circuit Court.

1.  Descent and Distribution—Wills—Debts of Intestate or Devisor—Liability of Heir or Devisee.—Under Sections 2088 and 2089, Kentucky Statutes, and under Section 434, Civil Code, an heir or devisee is personally liable for the debts of his intestate or devisor, to the extent of assets received by him, regardless of whether or not the property descended or devised is located in this State or elsewhere, or was aliened or conveyed by the heir or devisee prior to the institution of the action.

2.  Descent and Distribution—Parties to Action—Liability of Heir or Devisee—Right to Sue Executrix of Heir or Devisee.—An executrix of an heir or devisee, who is personally liable for the debts of his intestate or devisor, may be sued and a recovery had to the extent of assets received by the heir or devisee to be levied on the assets in the hands of the executrix, even though the particular assets, for the receipt of which the heir or devisee is liable, may never have come into the hands of the executrix.

3.  Judgment—Conclusiveness—Pleading—Demurrer.—A plea of res adjudicata, which fails to allege that the question presented was actually decided or necessarily concluded by a judgment rendered in a foreign court, but alleges that the question is still pending in a foreign court and has never been decided, is bad on demurrer.

4.  Descent and Distribution—Wills—Debt of Intestate or Devisor—Liability of Heir or Devisee—Amount of Recovery.—Where the curtesy estate of a husband, who was surety for his deceased wife, is sold to pay the debt, he, in an action against the wife's heir or devisee to hold the latter liable to the extent of assets received from his mother, can recover only the purchase price of the estate so subjected, together with the interest thereon.

BREATHITT & BREATHITT and AUSTIN PEAY for appellant.

SELDON Y. TRIMBLE, A. R. GHOLSON, PETRIE & STANDARD and TRIMBLE & BELL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming on both original and cross-appeals.

On December 17th, 1908, Evelyn Jefferson and W. B. Jefferson, her husband, executed and delivered to W. P. Taylor, at Guthrie, Kentucky, a note for $1,948.00. W. P. Taylor was the son of the Evelyn Jefferson by her former husband. Some time thereafter Mrs. Jefferson died the owner of a tract of land in Montgomery, Tennessee, which descended or was devised to her two sons, Wiley P. Taylor and Edwin R. Jefferson, subject to the curtesy estate of W. B. Jefferson. On February 17th, 1911, Wiley P. Taylor brought suit in the Chancery Court of Montgomery County, Tennessee, against W. B. Jefferson and the administrator of his mother to recover on the note in question. The suit was abated as to his mother's administrator, because prematurely brought. W. B. Jefferson pleaded that he was a mere surety on the note, but was held liable. Subsequently Wiley P. Taylor died and his executrix filed a bill in the Chancery Court of Montgomery county, Tennessee, against W. B. Jefferson to subject the latter's interest in his wife's estate to the payment of the judgment. His life estate was sold for the sum of $1,805.00 and Wiley Taylor's executrix became the purchaser.

Alleging that the debt for which his curtesy estate was sold was the debt of Evelyn Jefferson and that he was a mere surety, and that Wiley P. Taylor received from his mother's estate more than sufficient assets to discharge the debt, W. B. Jefferson brought this suit against Wiley P. Taylor's executrix to recover the value of his curtesy estate, which was subjected by the Tennessee court to the payment of the note there sued on. On final hearing the chancellor rendered judgment in favor of W. B. Jefferson for the sum of $1,805.00, the purchase price of his curtesy estate, together with the interest thereon from January 28th, 1913. Wiley P. Taylor's executrix appeals and W. B. Jefferson prosecutes a cross-appeal.

Aside from a general denial of the allegations of the petition, defendant presented the following defenses: (1) The only assets which Wiley P. Taylor received from his mother consisted of land in Tennessee, which is not subject to the jurisdiction of the courts of this State,

and that, therefore, no personal judgment could be rendered against his executrix; (2) a plea of *res adjudicata.*

The evidence clearly shows that the note signed by Evelyn Jefferson and W. B. Jefferson was executed and delivered in Kentucky, and the money paid there, and that Evelyn Jefferson was the principal debtor, and W. B. Jefferson her surety. That being true, it is necessary to consider only the defenses presented below and here urged as grounds for a reversal.

It is true that this court in a number of decisions, based on the old statutes on fraudulent devises, enacted in 1792, and found in Morehead & Brown's Statute Law, volume 1, page 742, held that these laws were local in character and did not apply to lands devised in another State. Payne, &c., v. Logan's Admr., 4 Bibb., 402; Brown v. Bashford, 11 B. Monroe, 67. The reason for this holding is that the statutes in question afforded the creditor a remedy by proceeding *in rem,* and only sought to make a devisee personally liable in the event that he aliened or disposed of the property devised before suit was brought. Doubtless, with a view of counteracting the effect of such a ruling, the revised statutes, containing several provisions on the subject, and the Civil Code, containing an additional provision, were enacted. The result is that we now have in force the following statutes:

"2084. Devisee liable in same manner as heir. A devisee shall be liable for all debts and liabilities of the testator in the same manner as the heir of the testator would have been liable if the property devised had descended to the heir.

"2085. Joint action against representative and heir or devisee. The same actions which lie against the personal representative may be brought jointly against him and the heir or devisee of the decedent, or both, and shall not be delayed for the non-age of any of the parties.

"2086. Devise in good faith for payment of debts. The last two sections shall not apply to a devise made in good faith for the payment of any of the testator's debts if such devise have not the effect of giving precedence in favor of one creditor to the prejudice of another.

"2087. Alienation before suit vests purchaser with title—liability of heir. When the heir or devisee shall alien, before suit brought, the estate descended or devised, he shall be liable for the value thereof, with legal interest from the time of alienation, to the creditors of the decedent or testator; but the estate so aliened shall not be liable to the creditors in the hands of a *bona fide* purchaser for valuable consideration, unless action is instituted within six months after the estate is devised or descended to subject the same.

"2088. Liability to extent of assets received. To the extent of assets received, the representative, heir, and devisee of an heir or devisee, shall be chargeable for the liabilities of their decedent or testator, respectively, to the creditors of the original decedent or testator.

"2089. Action by creditor—lien on estate devised or descended. The heir or devisee may be sued in equity for any liability of the decedent or testator, and he, the creditor, may also, in such suit, if demanded, obtain by the proper procedure a lien on any specified property descended or devised not theretofore aliened, but not so as to prejudice thereby any other creditor."

"Section 434, Civil Code—Legatees and distributees liable to creditor. Legatees and distributees shall be liable to a direct action by a creditor to the extent of estate received by each of them, notwithstanding the failure of the creditor to appear and the discharge of the personal representative as described in the preceding action; and that liability shall continue during the same period that the liability of the personal representative would have continued but for said discharge."

Whatever may have been the ruling of this court, based on the old acts of 1792, and section 2085, which appears to have been taken from the old acts and reincorporated in the statutes, we think it perfectly clear that by the provisions of sections 2088 and 2089, and the foregoing provision of the Code, the Legislature clearly intended to impose on the heir or devisee personal liability to the extent of assets received. Section 2088 in terms so provides. Section 2089 not only gives the right to sue the heir or devisee for the liability of the decedent or testator, but says that the creditor "may also, in such suit, if demanded, obtain by the proper procedure a lien on any specified property descended or devised," etc. Not only so, but section 434, *supra,* of

the Civil Code, also provides that "legatees and distributees shall be liable to a direct action by a creditor to the extent of estate received by each of them." In other words, the only inquiry is: Did the heir or devisee receive assets from his ancestor or devisor? If so, he is personally liable. As the statutes clearly impose a personal liability on the heir or devisee, in case his intestate or devisor is liable it is immaterial whether the property devised or descended is located in this State or elsewhere, or was aliened or conveyed by the heir or devisee prior to the institution of the action. Schaeffer v. Voght, 23 Ky. Law Rep., 2295; Lancaster v. Wolff, 110 Ky., 768; Massie v. Hiatt, 82 Ky., 320; Cline v. Waters, 28 Ky. Law Rep., 679; Jones v. Comer, 25 Ky. Law Rep., 773; Bennett, v. Miller, 159 Ky., 105. And as the heir or devisee is personally liable, his executrix may be sued and a recovery had to the extent of assets received by the heir or devisee to be levied on the assets in the hands of the executrix, even though the particular assets, for the receipt of which the heir or devisee is liable, may never have come into the hands of the executrix.

The next question is the propriety of the trial court's action in sustaining the demurrer to the plea of *res adjudicata* presented in the second paragraph of defendant's answer. After referring to the two suits in Tennessee, the paragraph in question does allege that W. B. Jefferson sought, by cross-action against Wiley P. Taylor and Edwin R. Jefferson, and against the defendant, as executrix of Wiley P. Taylor, to enforce the collection of the claim set up herein by subjecting the lands of their mother, Mrs. Evelyn Jefferson, and which were inherited by them from her. The answer goes on to allege that the said Jefferson, having in the lifetime and since the death of Wiley P. Taylor twice had an opportunity to litigate the claim which he is setting up in this law suit, he ought not now, in equity and good conscience or in justice to the defendant, to be permitted to drag the defendant into court to litigate questions "which were presented in the two chancery cases heretofore pending, and, so far as defendant knows, still pending in the Montgomery Chancery Court." The answer also alleges that said Jefferson, having selected his forum in which to try out these matters, should not be permitted to abandon the courts of

his domicile and come into Kentucky for the purpose of harassing and annoying the defendant with further litigation. While it may be gathered from the answer that the question presented in this action was attempted to be raised by the plaintiff in the Tennessee actions, yet there is an utter failure to allege that the question was actually decided, or was necessarily concluded by the judgments therein rendered. On the contrary, it would appear from the answer that the question is still pending in the Tennessee courts and has never been decided. Manifestly, the plea of *res adjudicata* is insufficient and the trial court did not err in sustaining the demurrer to that paragraph of the answer presenting this plea.

On the cross-appeal of W. B. Jefferson it is insisted that he is entitled to recover the full value of his curtesy estate, which was sold for the payment of his wife's debt. For the purpose of this action, however, the value of his life estate is what it actually brought at the decretal sale. All that he paid for his wife was the purchase price which his estate brought. That being true, he is entitled to recover only that sum with interest. It follows, therefore, that the judgment of the chancellor was proper.

Judgment affirmed both on original and cross-appeals.