## Runyon's Administratrix et al. v. Runyon.

(Decided February 20, 1931.)

J. J. MOORE and W. SCOTT WHITT for appellants.

WILLIS STATON for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming on cross-appeal and reversing on original appeal.

J. P. Runyon died intestate on November 15, 1925, the record title holder of a house and lot in the town of South Williamson in Pike county, Ky. He left surviving him his widow, May Runyon, who later married Ben Harmon, and two infant children, Violet Fern Runyon and J. L. Runyon. At the time of J. P. Runyon's death the appellee Charles Runyon was living in one of the rooms of the J. P. Runyon house and he continued to live there along with the family of J. P. Runyon for some time after the death of J. P. Runyon. After J. P. Runyon's widow had intermarried with Ben Harmon, she instituted a proceeding in the magistrate's court to dispossess Charles Runyon of his room, and, to checkmate her, he thereupon brought this suit against her and the infant children of J. P. Runyon. In his original petition, he averred that his father, his brother Sidney Runyon, his deceased brother, J. P. Runyon, and himself had bought the lot on which stood the J. P. Runyon house in the year 1918, and that they later built this house upon it; that they had all contributed to the building of this house which was to be a home for all of them; that the record title for the sake of convenience was put by the father in the name of J. P. Runyon, and that, although

the deed was absolute on its face, it was the understanding and agreement between all the parties that J. P. Runyon was to hold the property in trust for himself and his two brothers, Sidney and the present appellee; that thereafter Sidney married and he was deeded the back portion of the property they had bought in full satisfaction of the sum of $300 he had put into the property and any claim he had upon the trust, and that the remainder of the property, including the house, was thereafter held by J. P. Runyon in trust for himself and the appellee. He asked that one-half of the property be conveyed to him in satisfaction and discharge of the trust. The defendants, now appellants, by way of defense, contented themselves with a traverse and an affirmative claim of ownership of the property as the heirs at law of J. P. Runyon. The appellee then proceeded to take his proof in the course of which he introduced a paper which has been partially destroyed by fire, having been thrown to the flames, as appellee claims, by the appellant May Harmon. As salvaged, this much can be read from the paper:

"After date I promise to pay my brother Charlie Run into my house which we all baugh (sic) together and I am to deed all of it to him in time if I can't pay him the $1100 and he is to have a room free of charge till I pay him the money. I am to deed him half of the cornor (sic) lot and the lot that our father is to deed to us on Main street in the said South Williamson where we all lived together below the rink.
"J. P. Runyon."

The property described in this paper is the property here in question. The appellee's witnesses testified to the arrangement as claimed by him in his pleadings, but his proof, aside from the paper produced, was indefinite as to the exact amount he had put into the property. It is fair to state that the proof shows that the appellee is troubled with nervous disorders that sometimes affect his mentality. But no one of his witnesses puts his contributions to the property at less than $600, and he stated that he thought it ran at least as high as $1,000. The paper which he filed, and the genuineness of which is not attacked by the appellants by any pleading or proof, puts it at $1,100. The proof for the appel-

lants amounted really to nothing but that J. P. Runyon was, as is conceded, the record title holder of the property. The case was submitted with the pleadings and proof in this shape. The trial court declined to enter a judgment stating that, as he viewed the record, the appellee had not shown himself entitled to a judgment enforcing the alleged trust, but that he had shown himself entitled, if his pleadings had justified it, to a money judgment. The appellee then filed an amended petition in which he alleged that the appellant, May Runyon Harmon, was ''admx.'' (but of whom he never said), and that he had loaned his brother the $1,100 as shown by the paper in question, and that his brother was indebted to him in this sum at the time of his death, and that he had made demand on May Runyon Harmon, ''admx.,'' for this amount and had filed with her the necessary proofs of claim, copies of which he filed with his pleadings, and that she had declined to pay him said amount by reason of all of which he prayed judgment, against her and the two infant children, in the sum of $1,100. The court allowed this pleading to be filed over the objection of the appellants, and, the pleading then being traversed of record, the court again, over the objection of the appellants, submitted the case and adjudged that the appellee recover of May Runyon Harmon, administratrix, and the two infant appellants the sum of $1,100, to secure the payment of which it awarded him a lien on the property which was ordered sold. From this judgment this appeal is prosecuted.

The judgment will have to be reversed. Kentucky Statutes, sections 2088 and 2089 read:

''To the extent of assets received, the representative, heir and devisee of an heir or devisee, shall be chargeable for the liabilities of their decedent or testator, respectively, to the creditors of the original decedent or testator.

''The heir or devisee may be sued in equity for any liability of the decedent or testator, and he, the creditor, may also, in such suit, if demanded, obtain by the proper procedure a lien on any specified property descended or devised not theretofore aliened, but not so as to prejudice thereby any other creditor.''

In construing these sections, in the case of Taylor's Ex'x v. Jefferson, 167 Ky. 454, 180 S. W. 801, 802, we said:

"Whatever may have been the ruling of this court, based on the old acts of 1792, and section 2085, which appears to have been taken from the old acts and reincorporated in the statutes, we think it perfectly clear that by the provisions of sections 2088 and 2089, and the foregoing provision of the Code, the Legislature clearly intended to impose on the heir or devisee personal liability to the extent of assets received. Section 2088 in terms so provides. Section 2089 not only gives the right to sue the heir or devisee for the liability of the decedent or testator, but says that the creditor 'may also, in such suit, if demanded, obtain by the proper procedure a lien on any specified property descended or devised,' etc. Not only so, but section 434, supra, of the Civil Code, also provides that:

" 'Legatees and distributees shall be liable to a direct action by a creditor to the extent of estate received by each of them.'

"In other words, the only inquiry is: Did the heir or devisee receive assets from his ancestor or devisor? If so, he is personally liable."

There is no proof in the record as to the value of the assets of J. P. Runyon which descended to the appellants as his heirs. The nearest we come to such proof is the statement in the affidavit of J. E. Dotson that the house in which the parties lived was worth now $700. But there is no showing what the land is worth. All the proof as to value, save the passing statement in Dotson's affidavit, was directed towards what it cost to build this house many years prior to the death of J. P. Runyon. While the heirs are personally liable in a direct suit by a creditor of their ancestor, without demand first made on the personal representative of the ancestor, at least where there is no personal representative or administration of the estate has been closed, as appellants' proof shows to have been the case here, see Hill's Adm'r v. Grizzard, 133 Ky. 816, 119 S. W. 168, they are personally liable only to the extent of assets received, and, there being no showing that the appellants have received assets to the value of $1,100, it was error to give a personal judgment against them in that amount or any amount

above what the proof showed to be the value of such assets.

Further, the original petition was an effort to enforce an alleged trust. By the amended petition, it was sought, in the alternative, to enforce the collection of a claim for money advanced the decedent. The trial court, over the objection of the appellants, resubmitted this case four days after the amended petition had been filed and without opportunity on the part of the appellants to prepare and introduce their proof on the issues raised by that amended pleading. This, too, was error. The cause of action set up in the amended petition was first injected into the case at that time, and appellants were clearly entitled to adequate time to prepare and introduce their proof on the new issue.

The appellee was not entitled, under his own proof, to a judgment awarding him a half interest in the property, as by his cross-appeal he insists that he was. The paper signed by his brother and which he introduced in evidence shows that the agreement which his other witnesses testified with regard to, and which was to the effect that J. P. Runyon was to deed to him a half interest in the property, was conditioned on the inability of J. P. Runyon to pay him back the $1,100, which the paper recites that the appellee had advanced to his brother for the purpose of buying the property and building this house. There is no showing in this record, as heretofore stated, what was the financial condition of J. P. Runyon at the time of his death or at any other time. He may or may not have been able to pay what he owed the appellee. Hence the court did not err in the present state of the record in refusing to award the appellee the relief sought in his original petition.

On the cross-appeal, the judgment is affirmed without prejudice however to the chancellor on the retrial of this case entering such judgment as the appellee may show himself entitled to under the pleadings and proof. On the original appeal, the judgment is reversed for proceedings consistent with this opinion.