## Simons' Executor et al. v. Simons.

(Decided Feb. 23, 1934.)

JOHN O. ARNOLD for appellants.

MORRIS B. GIFFORD and GIFFORD & STEINFELD for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Reversing in part and affirming in part.

Lum Simons owned a large body of land in Louisville. He was much in debt, and had executed a mortgage to a trust company to secure a debt of $18,891. Suit was brought to enforce this mortgage on November

558

16, 1920. He died in 1922. After his death the land was put up for sale, and there were no bidders. He left a will by which he devised everything to his wife, Lucy Simons. She qualified as the executrix of the will and had the land cut up into lots, and by agreement it was ordered that all the lots be sold, although a sale of all the lots was not necessary to pay the trust company's debt. The sale was had on June 9, 1923. Mrs. Simons did not want any of the lots sacrificed. She had no money to buy any lots with. Finally, after a consultation between her, her attorney, and her husband's nephew, Lee Simons, it was agreed between them that Lee would buy in any lot that did not bring $8 a foot, and, as he was a nephew of Lum Simons and connected with him otherwise, it was thought not wise for him to buy in his name, as it might look like by-bidding. So it was arranged that Harry Marx would bid on the lots so that none would be sold for less than $8 a foot. The sale was had on these terms. Marx ran all the lots up over $8, except one lot, and this he bid in for $910, which was $7 a foot. Marx merely acted for Lee Simons, and so, when the sale was over, he assigned his bid to Lee Simons' wife. The other lots had more than paid the debt of the trust company, and so this sale was just reported by the commissioner and no bond was executed by any one and no part of the sale price was paid. Thus matters stood until December, 1924. Then this lot was sold to Leo Klarer for $2,500; Klarer paying one-third cash and giving his note for the remainder, payable in one and two years, with interest. Mrs. Simons, as executrix, and Lee Simons and wife executed a deed to Klarer for the lot. The money that he paid was paid to a bank for Mrs. Simons. He paid the notes at maturity, with interest, and this money was also paid to her bank. Thus things stood until she died in June, 1929, leaving a will disposing of her property. Harry P. Reager, Jr., the executor named in her will, qualified, and on April 4, 1930, brought this suit for the settlement of her estate. Lee Simons in this action asserted a claim to the proceeds of the sale of the above lot for $1,590, being the amount of the profit made on this purchase over and above $910 when it was sold later for $2,500, asserting that he was to have the profit on this transaction and that he had simply lent his aunt the money to use as long as she lived as she was short of means. The circuit court sustained this claim, and the executor appeals.

The proof is clear and uncontradicted that Lucy

Simons was unwilling for the property to be sold for less than $8 a foot; the proof as a whole shows that the agreement with Lee Simons was that he would bid the lots up to this, and that this was simply an arrangement for the protection of the estate. He certainly understood it this way, because he paid nothing down on the purchase of this lot and executed no note for the purchase money. His conduct after the sale conclusively confirms the testimony as to the agreement between the parties before the sale was made. The purchaser of every other lot sold at that sale was required to comply with the terms of the sale. When the deed was made to Klarer in December, 1924, the two lien notes were taken in the name of Lee Simons and were immediately turned over to the bank for Mrs. Simons. The cash was also paid to the bank for her. About this time she expressed satisfaction that Lee Simons had made a profit on the transaction, but she did not know that the notes were taken in the name of Lee until Klarer got ready to pay off the last note in December, 1926. She then went to the clerk's office to release the lien and for the first time found that the transaction was all in Lee's name. She then sent for Lee, and he told her it was a mistake, that it should not have been in his name. After this she frequently expressed dissatisfaction with the way Lee had treated her, saying that it was fortunate she did not die before the money was paid, and declaring that she did not owe Lee anything. But we do not rest our judgment on her statements. We rest it entirely upon Lee's own conduct. He clearly bought the lot in simply to protect the estate. In the original agreement there was nothing said about any profit to him. The whole idea was to protect the estate. That was one reason that Mrs. Simons was glad that Lee had made a profit on the transaction, because it would be a profit for the estate. Lum Simons and his wife had no children, Lee had been for years intimately associated with them and stood almost like a son. For this reason he took an active interest in protecting his aunt from coming to want, as she might have done if the real estate had all been sold and brought nothing more than the amount of the mortgage. The arrangement he made, as it was understood and carried out by the parties, placed no financial obligation upon him. He simply held the property for the estate as he had bought it to protect the estate. There was at no time any assertion by him against his aunt of any right to this fund. If he had any claims, it was in-

cumbent upon him, under the circumstances, to bring it definitely to her notice and have her definitely assent to it. Clearly there is no proof of this. It is the policy of law to protect the estate of deceased persons from claims, unless established by satisfactory evidence, for the reason that the decedent cannot speak for himself. Under this principle and in view of his own conduct Lee Simons cannot be permitted to assert any right to any part of the proceeds of the sale of the lot after the death of his aunt; for the purpose of the arrangement with him was the protection of the estate. To give it the effect now asserted by him would be not to protect the estate, but to make a profit for him. This clearly was not what the parties then intended, for he incurred no liability and was out nothing. He was simply the gratuitous agent of the executrix buying the property for the estate and held it in trust for the estate. The proof utterly fails to show any subsequent agreement changing this relationship. He cannot testify for himself as to any transaction by him with the decedent.

"As long as a trust fund can be distinctly traced, the chancellor will fasten upon it and apply it to the purpose to which it ought to have been applied, unless the rights of innocent third persons have intervened." Allen v. Russell, 78 Ky. 105. See, also, Board of Trustees of Fordsville v. Postel, 121 Ky. 67, 88 S. W. 1065, 28 Ky. Law Rep. 37, 123 Am. St. Rep. 184; Hill v. Flemming, 128 Ky. 201, 107 S. W. 764, 32 Ky. Law Rep. 1065, 16 Ann. Cas. 840.

The circuit court on the facts should have disallowed the claim of Lee Simon for $1,590 on this transaction.

John O. Arnold was the attorney for the executor of Lucy Simons and as such brought this suit and attended to the matters involved in it. He asked a fee of $1,500. The court allowed him $1,100. In the appeal before us the executor and John O. Arnold are made appellants and Lee Simons is made appellee. They are the only parties to the appeal. A cross-appeal has been granted Lee Simons, and on the cross-appeal he complains of the allowance to Arnold for $1,100. But the only reason for this is that he fears that there will not be enough of the estate to pay him his claim if Arnold is allowed $1,100. But, as his claim is disallowed, he has no interest in the amount of Arnold's fee. The ex-

ecutor is represented on the appeal by John O. Arnold, and in his brief he does not complain of the fee allowed Arnold as too high. · If Arnold desired to complain of the allowance to him as too small, he should have made the executor an appellee. The executor cannot complain that Arnold's fee is not larger. Only an appellee can prosecute a cross-appeal. On the whole case therefore the allowance to Arnold of $1,100 cannot be disturbed on this appeal.

Judgment reversed as to the claim of Lee Simons, and on the cross-appeal of Lee Simons the judgment is affirmed.