MOBILE COMPANIES, INC., Appellant,

v.

AMERICAN STATES INSURANCE COMPANY, Appellee.

No. 90–CA–2086–MR.

Court of Appeals of Kentucky.

Aug. 30, 1991.

Discretionary Review Denied by Supreme Court March 4, 1992.

Gregory J. Bubalo, Jeanne R. Clemens, Ogden, Sturgill & Welch, Louisville, for appellant.

William S. Wetterer Jr., William S. Wetterer III, Louisville, for appellee.

Before DYCHE, GUDGEL and MILLER, JJ.

MILLER, Judge.

Mobile Companies, Inc. (Mobile), brings this appeal from a summary judgment entered in the Jefferson Circuit Court. Kentucky Rule of Civil Procedure (CR) 56.

The facts are these: In 1985, one Robert H. Goodwin purchased the entire capital stock of Mobile Industrial Services, Inc. (MIS), a wholly-owned subsidiary of Mobile. The purchase price was $100,000, of which Goodwin paid $10,000 cash and executed his promissory note to Mobile in the amount of $90,000. The note was collateralized by a pledge of the capital stock thus acquired, together with certain personal property of MIS. Goodwin had made a number of payments on the note when litigation ensued between himself and Mobile, each claiming the other had, in some manner, breached the sales agreement. During the course of litigation, an interim agreement was entered between Goodwin and Mobile, whereby Goodwin was to escrow a sum, approximately equal to the balance owed on the note, to be disposed of according to and pending the outcome of the litigation. Goodwin did not have the money with which to fund the escrow. It happened that his daughter, Patricia LaFollette, as guardian of her infant children, maintained a trust fund which had been established with proceeds from the death of the children's father—a Louisville police officer killed in the line of duty. Apparently, at the urging of her brother, who was aware of their father's financial need, Patricia improperly and without authority withdrew some $85,000 from her fiduciary account. The funds were delivered to Hilliard Lyons, Inc. (Hilliard Lyons), a brokerage house, in escrow to fulfill the interim agreement between Goodwin and Mobile. It was hoped that Goodwin would be successful in the litigation and, therefore, able to return the proceeds to Patricia's guardianship account. Things did not take such a turn, however.

Upon learning of Patricia's improper withdrawal from the fiduciary account, the children filed an action in the Jefferson Circuit Court against her and American States Insurance Company (American States), her surety. Ultimately, American States replenished Patricia's fiduciary account and intervened in the litigation between Goodwin and Mobile as Patricia's subrogee under the principal enunciated in *National Surety Corp. v. First Nat. Bank*, 278 Ky. 273, 128 S.W.2d 766 (1939), thereby ultimately setting up the subject controversy between itself and Mobile. The simple and ultimate question is wheth-

er American States, as Patricia's subrogee, has a right to the funds in the Hilliard Lyons escrow account or whether Mobile is entitled to it. The record reflects that after American States intervened, its intervening complaint was held in abeyance by court order pending resolution of the dispute between Goodwin and Mobile. This dispute ended with Mobile the victor, and Goodwin assigning all his right, title, and interest in and to the Hilliard Lyons escrow account to it. At this point, of course, American States was sitting in abeyance.

There being no genuine issue as to material fact, our sole concern is whether the court sought out and applied the correct law. *Petty v. Codell Constr. Co.*, Ky., 346 S.W.2d 22 (1961); CR 56.03.

American States claims entitlement to the funds in the Hilliard Lyons escrow account under a principle called "the trust pursuit rule" recognized in the law of trusts. 76 Am.Jur.2d *Trusts* §§ 251 et seq. (1975). Mobile recognizes this rule, but denies application. Mobile contends it is entitled to the escrowed funds because of its alleged position as an innocent purchaser.

█ Under the trust pursuit rule, equity, subject to identification, will follow property wrongfully converted by a fiduciary and compel restitution to the beneficiary regardless of its present form. This rule, however, does not require restitution of a third person who has acquired the property without notice and for value. 76 Am. Jur.2d *Trusts* § 251 (1975). In the very early case of *Allen v. Russell*, 78 Ky. 105, 112 (1879), the rule was well stated that "as long as a trust fund can be distinctly traced, the chancellor will fasten upon it and apply it to the purpose to which it ought to have been applied, unless the rights of innocent third persons have intervened." In the case of *Hill v. Flemming*, 128 Ky. 201, 107 S.W. 764 (1908), I.B. Northcutt, deputy sheriff of Kenton County, Kentucky, used tax revenue for payment of a personal loan to one Thomas Hill. Payment was made by check signed "I.B. Northcutt, Deputy Sheriff." Hill deposited the check into his personal checking account at a local bank. In a suit by sureties on the sheriff's bond, Hill's checking account was reached. The theory was that the trust funds wrongfully appropriated by the sheriff continued to be impressed with the trust, and that the sureties on the sheriff's bonds were subrogated to the rights of the county and state for whose benefit the tax funds were held. The Court stated the rule as follows:

> The law is now well settled that as between the cestui que trust and trustee, and all parties claiming under the trustee otherwise than by purchase for a valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or altered state, continues to be subject to or affected by the trust.

*Id.* 107 S.W. at 766.

In *Simons' Ex'r v. Simons*, 254 Ky. 557, 71 S.W.2d 959 (1934), the foregoing principle was recognized with the court quoting from *Allen, supra*, and citing *Hill, supra*.

█ In view of the foregoing authority, it appears that our sole task is to consider Mobile's contention that it acquired title to the escrowed fund in good faith, without notice and for value. First, we are of the opinion that title to the escrowed funds remained in Goodwin, the depositor, until his assignment of all right, title, and interest therein to Mobile at the end of the litigation. The rule is that title to funds escrowed, pending the happening of an event, remain in the depositor until and unless the occurrence of the event. The rule is stated as follows in 28 Am.Jur.2d *Escrow* § 10 (1966):

> TITLE AND RIGHT OF POSSESSION; EFFECT OF DELIVERY AS BETWEEN PARTIES; EQUITABLE INTEREST.
>
> Where an instrument has been delivered to a depositary as a writing or escrow of the grantor, it does not become a deed, and no legal title or estate passes until the condition has been performed or the event has happened upon which it is to be delivered to the grantee or until the

delivery by the depositary to the grantee. *The same rule is applied to the deposit of money in an escrow.* (Emphasis added.) ...

Here, the funds were deposited pending the completion of the litigation between Goodwin and Mobile. Had Goodwin been the victor in the litigation, he would, of course, have retained title to the fund and, presumably, would have returned it to Patricia's fiduciary account. Such was not the case, however, and Mobile, having become victorious, received an obliging assignment of the escrow. At this time, American States was patiently awaiting in the litigation pursuant to court order. We must obviously conclude that all parties concerned were, at that time, on notice that the funds were improperly appropriated from Patricia's fiduciary account. It follows, then, that Mobile was not an innocent purchaser. American States was properly adjudged entitlement to the escrowed funds.

For the foregoing reasons, the judgment of the circuit court is affirmed.

All concur.