Chief Justice Robertson
delivered the Opinion of the Court.
By his last will, Philip Red, who died in Christian county, in this state, on the 17th of August, 1819, devised: first— to his wife, during her life or widowhood—with an injunction to educate all his children—all his estate, except his land and the debts due to him, which he directed his executor and executrix to vest in other land, all of which he devised equally to all his children; second— to five of his six children “as they [should] come of age or marry,” one negro girl or boy of a designated age, and one horse, saddle, bridle, bed and furniture, to each respectively; third—to his son Edgar, his sixth child, and the only child of his said wife, two slaves—Henry and William, a horse, saddle and bridle, and bed and furniture, when he should attain twenty-one years of age or should marry; fourth—to the same five children—Edgar being neither of them—all his slaves devised to his wife, and not otherwise disposed of in his will—their right to accrue at her death; and, in the event of her marriage, he directed that she should be “THIRDED.”
His widow and his brother William Red were nominated, and afterwards qualified, as his executors.
Some time in 1827, she intermarried with Joseph Wad-dell. Late in the year 1827, or early in 1828, commissioners, who had been appointed for that purpose by the Trigg County Court, made a settlement with the executor and executrix, and divided the slaves and personal estate equally between the widow and two of the testator’s daughters .and their husbands, with whom they had intermarried after his death—the other four children having died, intestate, without having married or attained majority. It seems that one third of the land— *159 as well that which was purchased in execution of the power given by the will, as that which the testator owned at his death—was also allotted to the widow; but, though we presume from intimations by the parties to this suit, that the allotment of land and slaves to the widow, was for life only, yet there is nothing in the record which can enable us to understand certainly how it was made. But there can be no doubt the commissioners, being of the opinion that four slaves—that is, Edmund and Mariah and Henry and William—belonged to the widow in her own right, excepted them from the allotments.
Bill, proceedings and decree, and objections to it— by the pl’tfs, and def’ts.
In 1828, the two surviving daughters and their husbands, Baker and Tyler, filed a bill in chancery, against the executor and the executrix and her husband, Wad-dell, alleging many things which we need not notice here, and praying for a settlement and a re-division of the estate.
Answers having been filed, and many depositions taken, the suit was abated as to the two female complainants, in consequence of their deaths; and the case having been prosecuted by the survivinghusbands, to a final hearing, the Circuit Court virtual^^^i^n^rfSft settlement and division made by the^c^usiMiG:a4i&3-W decreeing that Mrs. Waddell wai entitled, in neifbwn right absolutely, to the four (^"i|M^^|'|riah, Henry and William, and by dfbreeing to the coip¡|lainants, only the surrender of son|e still uncollected by the executor, and T^aaymen, t,qjpia note which had been given by himself to thc^fcstator.
The plaintiffs in error insist that the decree should now be reversed, because, as they allege: first—Mrs. Waddell is not entitled to the said four slaves; and, second—they were entitled to a decree for a greater sum than that which the Circuit Court allowed. The defendants, on their part, insist that, the plaintiffs had no authority to prosecute the suit after the death of their wives, and that, if they had, more was decreed to them than they had any just right to demand or expect. And both parties have, in elaborate arguments, relied on facts and positions, some of which are not, in our opinion, *160 sustainable; but all of which we will endeavor to cm1 brace, without special notice, in the general consideration, which we will now proceed, at once, to bestow two leac^n£ positions assumed by the plaintiffs.
A man obtainsas a loan, two tcThis wFe’sSfatirar, retains them de^ses'^hem^o hi_s son by that to/fatlraMraing a lunatic, his slaves tn'<5 divided out among his children,&those two, and two others allotted to ter the'last'two' her husband nedfes^fterwlÁch6 his wife’s father anddios°tifeiatter died owner slaves; the husfca-nd never, had am! they did not pass by his will. devisee to take under a will or forced1 Vnly "hi clear and well Afinan "devises estate to his wife, certain slaves to hadCa title"" his widow, after his right’ to^those same slaves by from "her She": she may claim under the last ti-tie, although she has notrenounocd the provisions
First. The slaves, Edmund, Mariah, Henry and William, were the property of the father of Mrs. Waddell, Thomas Racket of Virginia, who, according to this record, was a lunatic-, without any intermission, from some ^me antecedent to 1817, to his death, which did notocCur until two years or more after that of the testator, Red, who removed, with his wife, from Virginia to Kentucky, in 1817, and brought with him two of those four * / t / ^ slaves: that is, Henry and William—delivered to him, on ¡-oan by a son of Thomas Hacket, on the eve of his r ■ . departure lor this state. And about the time of his d®ath, and probably before that event, the children of Thomas Racket, or some of them made, among them-s®lyes, a provisional allotment of his slaves, in which Henry, William, Edmund and Mariah v/ere assigned to the testator’s v/ife; and, after his death, Edmund and Mariah were also brought to Kentucky by his executor, and were, together with William and Henry, appraised, as being among the slaves of the testator,
These ai’e the facts respecting the title to those four s]aves. And, therefore, as it appears, that the title must necessarily have remained in Racket as long as he lived: the testator had no right to those slaves, or to any of them; and, of course, they did not pass by devise or descent to his children, or any of them.
Still, the plaintiffs insist that, Mrs. Waddell cannot c]aim under the will and against the will; but must elect to hold as a devisee only, or surrender her interest under the whl. ^ se®ms to us j that a proper case for such an election has not been presented. Edmund and Mariah were not included in the will: first—because they are not mentioned; secondly—because they were not brought to Kentucky until after the testator’s death, and -were never in his possession; and, thirdly—because it does not appear, that he had, or pretended to have, any
claira to either of them, or even knew that they had - * been allotted to him. As to these two, therefore, there *161 •can be no ground for insisting on the doctrine of election.
_ of the will; and, if she acquiesced in the will,under the erroneous i'dea,that her husband, being in possession of the slaVes, had a right to devise them, she is not bound by that mistake.
An election cannot be enforced unless the devisee’s title existed when the testator died — according to some authorities.
A widow to whom property «whoó^^which she may claim as her own, makes her election by taking under the will, after which, she is precluded; the right of election does not recur „pon her marriage.
Certain slaves of a lunatic father were delivered (under a family arrangement) to his daugher’s husband, who devised them by his will, and after his death his executors obtained others under the same arrangement, and all were appraised as part of his estate; hut he died before his wife’s father; the slaves remained with her (as ex’x and devisee for life or widowhood,) and after her father’s death she claimed them in her own right (not under the will) and as her claim had been long acquiesced in—held that she had a right so to hold them, (after her 2d marriage) against the claims of her first husband’s heirs and devisees.
And as to Henry and William, devised to the testator’s son Edgar, in the event of his attaining 21 years of age? or marrying, a proper case for election—which is enforced in clear and well defined cases only—has not, in «far judgment, be'en made out-. When the testator died, and when his widow accepted the provision made for her by the will, she had no title to those slaves, because her father was still alive and non compos-: and surely, she ttoiild not be éompel-led to surrender a 'title afterwards acquired. She may, it is true, have hoped and even had strong reason to expect that, her father’s imbecility being irremediable, the premature allotment would never be disturbed; but .this was altogether contingent—depending on her surviving him, on his never being restored to reason, and on the acquiescence of his representatives in the unauthorized administration of his estate, during his physical existence; and even if she erroneously deemed her title to Henry and William valid, she, of course, must be presumed to -h-áve known, that, being in possession, her husband’s right to devise them was a necessary consequence of her title. This then nan be no ground for election. It was a mistake.
It is argued, however, that her marriage with Waddell fixed the time for election, and that, before that event her father had died. To this we answer: first—that, according to some adjudged cases, an election cannot be enforced unless the devisee’s title existed at the time of the testator’s death. Secondly—that even if a title acquired afterwards, and prior to an actual acceptanee .of the legacy or devise, could be brought within the doctrine of election—Mrs. Waddell is not bound now *162 to elect, because the time of election was when she first took under the will, and not when she married—her marriage not entitling her to any new right under the will, but only reducing the value of her pre-existent right, as a devisee, and which, having been once accepted, precluded her from renouncing the wilt; and she had thus bound herself, long before her father’s death. And, lastly—the death of her father did not necessarily vest a legal title in her; and, if she have any such title, it is to be inferred only from a long acquiescence in the ineffectual partition which had been made in her father’s lifetime, ancf which could not have had any legal effect until after his death, and without such subsequent ratification»
Devise for^ife or widowhood —to the wife—who is enjoined to educate the children: presumed that the testator intended the family should be kept together, and the children supported and educated out of the estate. Will directs, that the widow, in case of 2d marriage, shall be <tthirded:,i held that, upon her marriage she was entitled to a third of the estate,- as though there had been no will;and in that event, the will being silent as to the remainder, it goes to the heirs and distributees.
*162 Wherefore, as those four slaves have been long, in Mrs. Waddell’s possession, and as, notwithstanding the appraisement of them among the testator’s slaves (prior to her father’s death,) she seems to have claimed them, since,, as her own absolute property, and to have used them in that right—it seems to-us, that her first husband’s children had no- distributive interest in them, or any of them; and that therefore, the Circuit Court was right in refusing to enforce such a claim to distribution.
Second. The will enjoining upon the widow, as'it did, the' duty of educating the testator’s children, and providing'no means for their sus-tentation- as long they might remain unmarried and imbecile, we should presume, that it was his intention that she should, with the estate devised to her, maintain and educate them, as an undivided family, as long as she should continue her widowhood, and retain the entire estate, devised to her on- that contingency. And when she married, she was entitled, under the will, to a life estate in one third of the land owned by the testator at his death and of that after-wards purchased, in conformity with his instructions, and to one third of his slaves during her life, and to a third of his chattels absolutelyfor the direction, that she be “thirded” should be understood to mean that she should have “/ier thirds” allotted; that is, that interest, precisely, which she would have been entitled to by law, had there been no will, or had she elected to renounce the provision which it offered her. In addition to this, she is en~ *163 titled to a distributive share of her son Edgar’s interest in the slaves and chattels. But as the legacy to him was to take effect only on the event of his marrying or becoming twenty-one years of age, and he died an unmarried minor, his only vested interest is that, whatever it may be, which accrued to him by operation of kw; and the record does not exhibit facts sufficient for ascertaining the extent of that interest, which depends on the number of his brothers and sisters whom he survived, and, in a still greater degree, on the fact of his surviving the date of his mother’s marriage—on which event, the slaves devised to her, were distributable (after deducting her third) among the five devisees in remainder; and the chattels bequeathed to her, being no otherwise disposed of by the will, were (after the like deduction of one third) distributable among all the children of the testator who were then living. But when Edgar died, or how many of his brothers and sisters he survived, or when they died, does not appear.. -
.A son who was to have certain slaves when he came of age or married, having died before either of those events, took nothing by the will. His heirs are entitled to his share of so much of his father’s estate as was left undisposed of by thg will.
Husband & wife sue jointly, for a settlement of her father’s estate, and to recover her share as legatee and distributee, & her share of portions to which she is entitled in consequence of deaths of co-distributees; the wife dies pending the suit: as to so much of her interest as ac crued pending the coverture, the right survives to the husband, and he may, without revivor, go on . with the suit, & recover her share in chattels that accrued to her during the coverture, by the deaths of her codistributees, and her share of the slaves in which she had a vested remainder when they were married.
The choses in action which belonged to the wife before the marriage, pass to her administrator—not to the husband.
Chattels are devised to a wife for life or widowhood, then to a daughter, who, after the testator’s death, marries, but dies before the chattels are reduced to possession: the right does not survive to her husband, hut like other choses in action, goes to her administrator, first* to pay her debts, if any, then to her husband.
The complainants, as surviving husbands, are entitled to so much of the interests of their wives as accrued during coverture; and therefore, they have a right to claim, in this suit, without revivor, the distributive portions of their wives' in so much of the chattels as accrued to them, during their coverture, in consequence of the death of any of their co-distributees; and they are entitled also, to the like interests in the slaves, in which there were, when they were married, vested remainders to take effect, as we understand the testator to have intended, on the death or marriage of his widow; or, in other words, whenever the interest devised to her, should, according to the will, cease to continue. But they are not, as husbands merely, entitled to any choses in action which may have belonged to their wives on
A widow to. whom estate was devised for life or widowhood, onconditioti.that she shall maintain and educate the children, ia not accountable to those in re-, mainderfor what was consumed in the support of herself and family, and the education of the children, while she remained a widow.
Where husband and wife join in a Suit upon her rights, and she dies, if there are claims involved which do not sur vive to him, her personal repre. sentativemustbe made a party.
their marriages, and which had not been reduced lo pos-, session during coverture. The right to these, if there were any, did not survive, but passed by law to the administrators of the wives.
The right to so much of the chattels bequeathed to the. widow during her widowhood, as, being undisposed of farther by the will, became distributable on her maiv riage, did not survive to the husbands, but went first to. the personal representatives of their wives, for the ben-, efit, first of their creditors, if they had any, and eventu-. ally to their husbands; because the right of the wives, as, distributees, to the extent of those chattels, accrued to them on the death of the testator, dependent, as to the. time merely of the enforcement of it, on the event of the widow’s marriage, and the chose in action or pros-, pective right to distribution had, therefore, accrued pri- or to the marriage of the appellants; and moreover, the widow married before the. deaths of the wives of the ap-, pellants, and during their coverture.
fn her own right Mrs, Waddell is liable for only so. much, of the estate devised to her during her widowhood, as had not been consumed or otherwise appropriated in maintaining herself and family and in educating and sustaining the children, as long as she was a widow, and was entitled to the enjoyment and use of the property, and was bound to educate and take care of the children of the testator. And for such use and appro-; priation of the property, she is not therefore chargeable.
But the record does not show that, the whole amount for which the Circuit Court allowed Mrs. Waddell a credit, had been applied as she had a right to appropriate it without being chargeable. Nor does it exhibit sufficient data for a proper ascertainment of the. extent of the various interests involved in a proper settlement of the estate. Before n just and final adjustment of all the interests of all persons concerned could be made, the accounts of the executor and executrix should be settled, and the estate held by the widow under the will, and the disposition she had made o.f it should b.e ascertained. But neither of these seems to have been effected properly. The settlement by the County Court of *165 Trigg, appears to have been the basis of the decree; but, pot only was that settlement imperfect, but it does not appear that the County Court of Trigg had jurisdiction, or that the settlement, which it sanctioned, was altogether made by the consent of the parties, or was approved, in every respect, by the appellants. And more over, before there can be a full and final adjustment between the present parties, the personal representatives of the wives of the appellants should be parties.
Tho’ it does not appear, that the appellants are prejudiced by the decree below, yet, as the ease is not prepared o,n either side, and the court, for want of facts, cannot settle all the rights of the parties, the cause is remanded for further pro paration—the par ties respectively to pay their own costs here.
And consequently, though it does not appear certainly, that the appellants are prejudiced by the decree as rendered, yet, as all proper parties were not before the Court, and as also, the case has not been so prepared on either side, as to have authorized any judicial and conclusive adjustment of the claims of the parties, and especially as there is am-apparent defect of proof as to credits allowed to the executor and to the widow, according to the account stated by the County Court of Trigg—which does not appear to have had jurisdiction—we deem it proper to reverse the decree, and remand the cause with instructions to institute such proceedings as shall be proper for settling the rights of the parties, according to the principles of this opinion, as. far as they shall, in the farther progress of the investigation, be found to be applicable—whether the final result, when thus reached, shall be more favorable to the appellants or to the appellees than this decree, with which all parties seem to be dissatisfied, and of which each may have just cause for complaint, in some particulars, in consequence of the uncertainty and confusion of important facts concerning which the record affords no satisfactory clue.
But this being a case within the discretion of the Court as to costs, there will be no decree for costs tq either party.