TAYLOR
*vs*
HENDRICK'S ADMINISTRATOR.

</div>

---

## Taylor *vs* Hendrick's Administrator.

### ERROR TO THE WARREN CIRCUIT.

*Administrators.    Husband and Wife.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

B. W. HENDRICK having, as the administrator of Robert Hendrick, made advances for the estate beyond the assets in his hands, whereby he became a creditor to the amount of more than $2000, Baker, as administrator of B. W. Hendrick, filed this bill against the heir of Robert Hendrick, and against Taylor, the administrator *de bonis non* of his estate, to obtain satisfaction of the claim, by the sale of certain slaves and land, alleged to be a part of the estate of Robert Hendrick. The only question now presented in the case is, whether Esther

<div style="text-align:right">

CHANCERY.

*Case* 133.

*October* 1.

Case stated.

</div>

TAYLOR
*vs*
HENDRICK'S AD-
MINISTRATOR.

The husband re-
ceived the distri-
butive share of
his wife in her
father's estate in
Virginia, but in-
stead of a re-
funding bond,
left in the pos-
session of the
adm'r. a part of
the share so re-
ceived, (slaves,)
the husband
died; the second
husband receiv-
ed the slaves,
and afterwards
became adm'r.
*de bonis non,* of
his wife's first
husband —.Held
that the property
was vested in
the first husband
upon the divi-
sion, and that in
that character he
could not assert
an adverse right
to the heir or
creditor of the
first husband of
his wife.

and her two children are the property of Taylor, or be-
long to the estate which he represents.

It appears that R. Hendrick had married a daughter
of T. Doswell, of Virginia, who died, leaving four heirs,
and that, in a division of his estate under a decree to
which the heirs and administrator were parties, six
slaves, including Esther and her two children, were al-
lotted by the commissioners to Hendrick and wife, in
right of the latter, and that the report of the commis-
sioners, showing this allotment was confirmed by the
Court. It further appears, by the testimony of the ad-
ministrator, that his consent to the division was given,
upon the condition or agreement that he was to be in-
demnified against a debt or claim hanging over the es-
tate, which indemnity, so far as Hendrick was concern-
ed, was, as proposed by Hendrick, to be effected by
leaving a portion of the slaves allotted to him with the
administrator; and that, under this agreement, he took
away three, and left Esther and her two children. This
occurred in 1834. In December, 1838, R. Hendrick
having, in the mean time, died, and his widow having
married Taylor, Esther and her two children were de-
livered to the agent of Taylor and wife, in right of the
latter, upon the payment, or deposit, of $150 with the
administrator for his indemnity, instead of the slaves;
and Taylor, whose wife is since dead, retained the pos-
session until the commencement of this suit, and, in-
deed, is presumed to have retained it to the present
time.

Upon the face of the record from Virginia, and on
the parol evidence applicable to it, we are of opinion
that there was a complete distribution of the slaves
mentioned in the report of the commissioners, whereby
the title to the several slaves became vested fully in the
parties to whom they were respectively allotted, free
from the original claim or title of the administrator in
that character; and that the three slaves, Esther and
her children, were left with the administrator, not un-
der his original title, and as a part of the estate of his
intestate, undisturbed, but by the act of Hendrick, and
as a part of his property, or of his wife's, allotted to

them, in her right, as her portion of her father's estate. Under these circumstances, we are satisfied that, if any thing were necessary to vest the title of the wife in the husband, besides the division by the commissioner in his presence, and its confirmation by the Court, his act in leaving the three slaves with the administrator, as a pledge or indemnity, was such an assumption of right and control, as appropriated them to himself, and was, in effect, a reduction of them into his possession. They were afterwards held by the administrator in virtue of this act and agreement of Hendrick, and under him.

Then, the question is, whether Taylor's possession, under claim of ownership in right of his wife, has vested the title in him. There is no doubt that he acquired the possession in hostility to any title derived from Hendrick, whose administrator was then living, and might have asserted that title. But, in less than two years after Taylor acquired the possession, we find him assuming upon himself the office of representing the rights of R. Hendrick, in the character of administrator *de bonis non* of his estate. It appears, too, that the heir of R. Hendrick was an infant, of whose mother Taylor was the husband. Has Taylor acquired title in himself, by a possession continued under such circumstances, for more than five years?

Upon the death of R. Hendrick, the legal title to the slaves subject only to the indemnity of the Virginia administrator, passed to B. W. Hendrick, the administrator of Robert, and on his death it vested in Taylor, as administrator *de bonis non*, of the same intestate. Whether the first administrator was apprised of the facts on which the question of title depended, does not appear. It is certain, however, that Taylor knew, or, at least, might and ought to have known them, and we are of opinion that, having voluntarily assumed the office of administrator, which vested that title in him, as the representative of the intestate, he cannot set up his subsequent possession in his individual character, as extinguishing the title which, in his fiducial character, he held for the benefit of others. Conceding that, in this case, it does not appear that there was a fraudulent de-

sign in assuming the administration, or that Taylor was cognisant of the title of his intestate, this negative state of the evidence cannot be deemed sufficient to sanction the claim, in opposition to the apparent duty of the fiduciary, and in destruction of the interests committed to his charge. It would present a strong temptation, and open a wide door to actual fraud, if, under the circumstances of this case, the rights of the parties were to depend upon proof of fraudulent or innocent intention. By assuming on himself the administration, Taylor prevented others from assuming it, who might have asserted the title of the intestate against him, and whether ignorant of that title or not, having thus prevented its assertion against his possession, we are of opinion that he cannot claim the benefit of the statute of limitations, as running against that title, while he thus prevented its assertion.

Taylor was entitled to receive credit for his payments, &c. on account of the slaves, which have been allowed. The slaves were properly made subject to the debt of his intestate.

Wherefore, the decree is affirmed.

*B. & A. Monroe and Temple* for plaintiff.