LOUISE D. MCDONALD *vs.* THE HARTFORD TRUST COMPANY, ADMINISTRATOR.

First Judicial District, Hartford, October Term, 1925.

WHEELER, C. J., CURTIS, KEELER, HAINES and JENNINGS, Js.

Every person has a domicil somewhere, and can have but one domicil for one and the same purpose, and, once acquired, it continues until another is established.

A person cannot abandon a domicil until another has been established.

Two conditions must concur in order to establish a person's domicil;

McDonald *v.* Hartford Trust Co.

one, his establishment of a residence in a place, two, his intention in the course of such residence to make it his home.

A person's domicil is his home, that is, it is his fixed, established, permanent and ordinary dwelling-place or residence as distinguished from the transient place or places of residence to which business or pleasure may temporarily call him.

The mere intention not to return to the former place of residence unaccompanied by the intention to make of the new residence one's home will not effect a change of domicil.

The domicil of a wife follows that of her husband.

Where the law of another jurisdiction relating to a matter before the courts of this State is undetermined, it will be presumed to be the same as our own.

In 1880, the decedent left Springfield, Massachusetts, where he had been domiciled since birth, and, under the direction of the company by which he was employed, proceeded to Louisville, Kentucky, where he worked and resided continuously for the succeeding nineteen years, during which time he married the plaintiff in 1888 and, in 1890, received a sum of money from her, representing her share in her mother's estate, to be invested for her. In 1899, they removed, again at the direction of the company, to Hartford in this State, where he established a domicil which continued until his death in 1912. The trial court found that, at the time of his marriage in Louisville, the decedent had no intention of returning to Springfield nor of moving elsewhere and that, although he expected his employment in Kentucky to continue indefinitely, he at no time during his residence in that State intended to make it his fixed and permanent place of abode. *Held* that the trial court's conclusion that the decedent had abandoned his original domicil in Springfield and had acquired a new domicil in Louisville at the time of his marriage to the plaintiff and at the time he received her funds for investment, was not supported by the subordinate facts; and that, therefore, the trial court erred in holding that the law of Kentucky, and not that of Massachusetts, governed the legal relations of the parties with respect to the money transferred to the decedent by the plaintiff.

In applying the law of Kentucky, the trial court ruled that, under the common-law doctrine then obtaining in that State, the decedent had reduced the plaintiff's funds to his possession and had thus acquired the ownership of them. *Held* that, even if the rights of the parties were to be determined under the law of Kentucky, the trial court erred in its ruling, since the existence of an essential element of the doctrine in question, viz., the husband's intent to convert his wife's property to his own use, was negatived by the finding.

McDonald *v.* Hartford Trust Co.

In the light of the circumstances surrounding the transfer of the plaintiff's money to the decedent, including his acceptance of it, not as a gift, but upon the express condition that he invest it in her behalf, and his subsequent conduct in affirming her ownership, the law imposed upon him the obligations of a trustee, either upon the theory that such circumstances gave rise to an express trust by implication, or upon the theory that he became thereby her agent acting in a fiduciary capacity.

When the property of a *cestui que trust* is mingled with the trustee's own funds so that it is impossible to ascertain whether or not the trust fund is among the trustee's own funds, the trust as applied to these funds ceases, and the equitable right of the *cestui que trust* to follow the fund and impress a trust thereon fails; but if the specific property can be traced, or the proceeds of the property or money can be traced to any other fund, equity will impress a trust upon the property or the common fund.

In her prayers for relief, the plaintiff demanded that a trust be impressed upon the securities of the decedent in the possession of the defendant, but the trial court found that the decedent had so mingled the plaintiff's funds with his own that it was impossible to trace into these securities any part of the plaintiff's money. *Held* that this finding precluded the impressment of a trust upon the securities in the hands of the defendant, unless the fact that the decedent received these funds as trustee, or fiduciary agent, and had mingled them with his own, cast upon the defendant the burden of proving that the securities represented no part of the plaintiff's money, which question is left undetermined since the plaintiff's rights may be fully protected by a court of equitable jurisdiction under either of the plaintiff's remaining prayers for relief—an accounting to the plaintiff as *cestui que trust,* or damages for failure of the defendant to pay over to her upon demand the funds belonging to her.

Statutes of limitation do not run against the equitable remedies of a *cestui que trust* against his trustee, or of a principal against an agent acting in a fiduciary capacity, as long as the trust or the fiduciary relationship exists.

The equitable jurisdiction of Courts of Probate is wholly statutory and is concurrent with that of general courts of equity, unless the General Assembly has clearly expressed an intent that it shall be exclusive.

In the present case, the defendant contended that the plaintiff's claim was barred by reason of her failure to present it within the time limited by the Court of Probate for the presentation of all claims against the decedent's estate. *Held* that there was no merit to this contention, since the Superior Court, as a court of equity,

had concurrent jurisdiction with the Court of Probate over the plaintiff's claim, and was, in fact, the only tribunal which could properly consider and determine the complicated issues involved.

Where a trustee has wilfully or fraudulently mingled the trust funds with his own, equity may require him to pay the *cestui que trust* compound interest, or interest at stated intervals, upon the principal sum found due; but where, as in the present case, the mingling is merely the result of thoughtlessness or carelessness, and the trustee never claims nor intends to claim them as his own, only simple interest will be allowed.

Argued October 6th, 1925—decided February 23d, 1926.

ACTION to impress the assets of the estate of the defendant's intestate with a trust in favor of the plaintiff, for an accounting, for damages, and for other equitable relief, brought to the Superior Court in Hartford County and tried to the court, *Maltbie, J.;* judgment for defendant, and appeal by plaintiff. *Error; judgment to be entered for plaintiff.*

*John J. Dwyer,* for the appellant (plaintiff).

*John F. Forward,* for the appellee (defendant).

WHEELER, C. J.   We give in the first instance an outline of the case sufficient for an understanding of the discussion to follow; in the treatment of one or two of the points involved it will be necessary to give a more detailed statement of the immediate facts essential to the consideration of these points and this we shall do in connection with their consideration.   The defendant's decedent, McDonald, who was the plaintiff's husband, and the plaintiff were married in Louisville, Kentucky, on November 14th, 1888, and lived together until his death on October 21st, 1912.   On April 19th, 1890, the plaintiff received from her mother's estate a one-half interest in two mortgages which were assigned to her sister and self.   One of the mortgages was paid by the medium of a check for her one half,

made payable to her and endorsed to her husband and used in large part to pay plaintiff's sister for her one-half interest in the other mortgage which was transferred to plaintiff. Subsequently this mortgage was satisfied by a check made payable to the plaintiff, or to the plaintiff and her sister, and endorsed to McDonald. The amount received by the plaintiff from her interest in her mother's estate cannot be exactly ascertained, but was between $5,000 and $5,220.55. The steps taken to secure to plaintiff and reduce to cash her share from her mother's estate were taken without action or suggestion from McDonald, but with his consent and approval. When these checks were turned over to McDonald by plaintiff, she asked him to invest these amounts as he thought best, and he promised to do so. He deposited the checks in his own bank account, and invested and reinvested the proceeds at his pleasure and in his own name; thereafter he deposited the increment therefrom, together with all funds received by him from any source, in his own bank account, and drew against it for all his expenditures, whether on account of investments, household, personal, or other charges. At the time of his marriage to plaintiff, McDonald received a salary of $1,200 a year, which was soon increased to $1,500 and so continued to his death, with the exception of two years when he received $1,700 a year. He lived frugally. He had acquired some property before his marriage and he made a substantial saving out of his salary. For the last six years of his life he speculated on margin, his transactions exceeding a half million dollars. At his decease he was in possession of eleven different securities valued at nearly $33,000. Upon the former trial it appeared that the administrator, his final account having been accepted by the Court of Probate, had in his hands for distribution upward of

$29,000. The only outstanding and unpaid claim is that of the plaintiff. Neither McDonald nor the defendant has ever returned to the plaintiff any part of the funds so received from her, or the proceeds of properties purchased with them and resold, or made an accounting therefor. Plaintiff has made two demands upon defendant for these securities in its hands or cash in lieu thereof, which defendant refused. In the first count the plaintiff alleges that these eleven securities were purchased by her husband with this money, received from her or from the income thereof, or the proceeds of sales of other securities purchased with her funds, under the promise to invest and reinvest the proceeds thereof as his judgment might approve, and that her funds were accepted upon these conditions. In the second count she further alleges that the decedent has dealt with the funds so received by her from her mother's estate as his own, and refused to render an account of the funds or property so received, or any part thereof.

The plaintiff claims: (1) Damages. (2) A decree that all the described property was held by the decedent as trustee for the plaintiff and received by the defendant subject to this trust. (3) A decree that the defendant render an account of all this property, which the decedent held as trustee for the plaintiff and which came into the hands of the defendant.

The administrator does not claim that the plaintiff made a gift of these funds to the decedent, nor could it successfully upon the finding. Its claim is that the decedent husband reduced these funds to his possession, and by the law of his then domicil, Kentucky, he thereupon became, and the plaintiff ceased to be, their owner. At the time of the marriage of the plaintiff and her husband in 1888, the common-law rule was in force in Kentucky, and interpreted by the court of that

State to be that the husband acquired no rights in choses in action (*Woolley* v. *Holt,* 77 Ky. (14 Bush) 788, 790; *Rissberger* v. *Louisville* (Ky.) 118 S. W. 319; *Mills* v. *Shepard,* 30 Conn. 98, 101) such as the funds evidenced by the checks turned over to the decedent, belonging to his wife during marriage until he reduced them to possession. *Baker* v. *Red,* 34 Ky. (4 Dana) 158. The plaintiff concedes this to have been the law of Kentucky; she asserts that it has no application in this case, since the place of domicil of McDonald was Massachusetts and not Kentucky. The common-law rule did not then prevail in Massachusetts, so that the determination of McDonald's domicil is of primary importance. McDonald was born, domiciled, and married his first wife in Springfield, Massachusetts; and while in the employ of the Travelers Insurance Company in March, 1880, he was sent by the company to Louisville, Kentucky, to become cashier of its agency there and remained in that occupation until 1899. His first wife, who accompanied him to Louisville, soon died, and he brought her body to Springfield for burial, and made after this time only one visit to Springfield. He married, as we have stated, as his second wife, the plaintiff, in Louisville; they lived together in different boarding places for about eleven years and then, in 1899, removed to Hartford, at the summons of his company, and except for nine months in 1902, when the company sent him to Philadelphia, and in 1905, when the company sent him to Cleveland for seven months, they lived together in Hartford, boarding during all of this period, until McDonald's decease October 21st, 1912. McDonald's domicil in Hartford, after his removal there, appears to be one of the accepted facts in this case. In 1886, in an application for insurance, McDonald answered a question as to his residence by stating it to

be Louisville, and in certain deeds executed by himself and wife they are described as of that city. The trial court finds that at the time of his marriage McDonald had no intention of returning to Springfield, nor did he regard that as his permanent place of abode, or his home. At this time, and at no time during his residence in Louisville, did he have any definite intention of making that his permanent place of abode, but, on the other hand, he had no definite intention of moving elsewhere, and expected to retain his employment and continue to live there for an indefinite time in the future. From these facts the court drew the conclusion that McDonald had his domicil in Louisville at the time of his marriage and during his residence there until he removed to Hartford. The plaintiff's domicil followed that of her husband under the rule of law adopted in Kentucky, and similarly adopted in Massachusetts and Connecticut. *Townes v. Durbin,* 60 Ky. (3 Metc.) 352, 358; *Mason v. Homer,* 105 Mass. 116; *Mason v. Fuller,* 36 Conn. 160, 162. In a well-considered decision the trial court stated its view of the law upon these facts to be: "It is true that many cases give as one of the necessary conditions to work a change of domicil an intent to make of the new residence a permanent home. Those cases seem to me to overlook those situations where there is an abandonment of the former place of residence, with no intent to return to it, an actual residence in another place for a considerable time, and an absence of any definite intent to go elsewhere. To hold in such a case that the domicil continues in the former place of residence hardly seems to me a possible conclusion." Applying this rule, the court concluded: "that McDonald had his domicil in Kentucky at the time of his marriage seems to me not to admit of doubt."

No finding is made as to what constituted the acquisition of a domicil in Kentucky, and we do not find that up to April, 1890, when the plaintiff turned over these funds to her husband, the Court of Appeals of Kentucky had determined the rule for that jurisdiction. Under these circumstances we must presume the law of Kentucky to be the same as our law. *American Woolen Co.* v. *Maaget,* 86 Conn. 234, 243, 85 Atl. 583; *Hoxie* v. *New York, N. H. & H. R. Co.,* 82 Conn. 352, 355, 73 Atl. 754; *McLoughlin* v. *Shaw,* 95 Conn. 102, 106, 111 Atl. 62. Our law provides that every person has a domicil somewhere; the rule is a necessary one, since jurisdiction depends in many cases on the domicil. It also provides "that he can have but one domicil for one and the same purpose, and that a domicil once acquired continues until another is established." *First National Bank* v. *Balcom,* 35 Conn. 351, 358; *Easterly* v. *Goodwin,* 35 Conn. 279, 286. It follows that McDonald's domicil remained in Springfield, Massachusetts, until he had established another elsewhere. His intention not to return to Springfield was not an abandonment of his domicil at that time. The law does not permit one to abandon, nor recognize an abandonment of, a domicil until another has been established. It was at this point the trial court gave to McDonald's intention to abandon a larger significance in effecting a change of domicil than our law does. Before McDonald could acquire a domicil in Louisville two things were necessary, he must have established a residence there, and while so residing he must have had the intention of making it his home. His intention not to return to Springfield, coupled with his residence in Louisville, were relevant facts tending to prove that he intended to make Louisville his home, but by themselves they are not conclusive. Domicil, in the technical sense of the term, we define in *Yale* v.

*West Middle School District,* 59 Conn. 489, 491, 22 Atl. 295, to be "the actual or constructive presence of a person in a given place, coupled with the intention to remain there permanently." In *Salem* v. *Lyme,* 29 Conn. 74, 79, we say: "But domicil is but the established, fixed, permanent, and may therefore be said to be the ordinary dwelling-place or place of residence of a party, as distinguished from his temporary and transient though actual place of residence. One is his legal residence as distinguished from his temporary place of abode; or, to use the language of the charge, one is his home, as distinguished from the place or places to which business or pleasure may temporarily call him." We have here the true meaning of domicil, the ordinary dwelling-place or residence, the home of a person. The fact of such residence, coupled with the intention to make of it one's ordinary dwelling-place, his home, makes it the place of one's domicil.

In *Hartford* v. *Champion,* 58 Conn. 268, 275, 20 Atl. 471, the court, by CHIEF JUSTICE ANDREWS, describes the requisites necessary in order to effect a change of domicil: "All the conditions which are required to constitute the domicil in the given place must be transferred to the new place." When this is not done the domicil is not changed. "The old one is not abandoned, the new one is not acquired. This, of course, excludes the existence of an intention to return to the former place; for the existence of an intention to return is inconsistent with the idea that the former home is abandoned. . . . It was essential to the defendant's case that she should prove a residence in Springfield or in Suffield so permanent as to exclude the existence of an intention to make a domicil elsewhere, and so permanent as to exclude an existing intention to return to Hartford. If she had not done this she had not shown any domicil in either of those

towns." When one transfers to the new place all the conditions which constitute the old place his domicil, this is but another form of expressing the fact that one has transferred his home to the new place in order to acquire a domicil there. In *Roxbury* v. *Bridgewater,* 85 Conn. 196, 201, 182 Atl. 193, we held that where one changed his place of residence with the intention of making the new place his home he had acquired a domicil there. "A change of domicil is a question of 'act' and 'intention.' Where there is an actual abiding in a place, the intention with which it is accompanied is the controlling factor in determining the question of domicil." The length of time of residence in the new place need only be, we point out, "sufficient time to accomplish the act of removal, if that act be attended with the requisite present intention." We emphasize the necessity of there being an established or permanent place of abode to constitute a change of domicil, in *Gildersleeve* v. *Gildersleeve,* 88 Conn. 689, 691, 92 Atl. 684, and *First National Bank* v. *Balcom,* 35 Conn. 351, 357. The establishment of a permanent place of abode is the establishment of a home. We say, in *Gold* v. *Gold,* 100 Conn. 607, 610, 124 Atl. 246: "The essentials upon which the conclusion of a change of domicil must rest, are an intention to abandon the old domicil and to acquire a new one in another place where a residence has been established." The intention to acquire a new domicil is another way of expressing the intention to make a new home or the intention to establish a new place of abode where the changed residence has been established.

Story, in his Conflict of Laws (5th Ed.) § 44, says: "Two things, then, must concur to constitute domicil; first, residence; and secondly, the intention of making it the home of the party. . . . It is the fact, coupled

with the intention of remaining there." That domicil and home are synonymous terms finds further support in the Draft on Domicil, approved by the American Law Institute and prepared by Professor Beale and his advisers. Section 20 of this Draft reads: "A person cannot change his domicil by removal to a new dwelling-place without an intention to make the new dwelling-place his home."

The finding falls far short of finding, or justifying the necessary inference from the facts found, that McDonald intended in April, 1890, or during any of the period of his residence in Kentucky, to make his home in Louisville. The court has expressly found that he did not intend to make Louisville his permanent place of abode, and the facts found clearly indicate that he did not regard Louisville as his home and did not at any time intend to make it his home. If McDonald did not acquire a domicil in Kentucky, his former domicil in Massachusetts continued to be his domicil, until he acquired another in Connecticut, and also that of the plaintiff after her marriage. By the law of Massachusetts existing at the time the plaintiff turned over these funds to her husband, the funds, when received in the form of a one-half interest in the two mortgages, became her sole and separate estate, and so continued when she turned the proceeds of these over to her husband; and over them he acquired no ownership, dominion or control by virtue of his relationship to her, and no right to reduce them to his possession. Public Statutes of Massachusetts, Chap. 147, § 1, now General Laws of Massachusetts (1921) Chap. 209, § 1; *Pacific National Bank* v. *Windram,* 133 Mass. 175, 178; *Ago* v. *Canner,* 167 Mass. 390, 391, 45 N. E. 754. If the facts found required the conclusion that Kentucky was the domicil of McDonald at the time of his marriage to the plain-

tiff, we would be unable to hold that the court's conclusion that McDonald had reduced to his possession these funds legally followed from the subordinate facts.

Under the law of Kentucky, as we understand, the reduction to possession of the wife's property by the husband requires the co-ordination of two factors, the act of possession or appropriation, coupled with the intention to convert the property to his own use. Both factors must be present, or the reduction to possession does not take place. The act of possession by the husband will be held to be prima facie evidence of a conversion to his own use unless a contrary intention is found in the circumstances present. *Sanders* v. *Sanders's Exrs.,* 51 Ky. (12 B. Mon.) 40; *Taylor* v. *Hendrick's Admr.,* 48 Ky. (9 B. Mon.) 597. The physical act of reduction to possession may be evidenced by any act or acts by which the husband exercises control and dominion over his wife's choses in action. *Taylor* v. *Hendrick's Admr.,* 48 Ky. (9 B. Mon.) 597. Choses in action of a wife, such as the funds in controversy, not reduced to possession by a husband in his lifetime, survive to her. *Kellar's Exrs.* v. *Beelor,* 21 Ky. (5 T. B. Mon.) 573; *Baker* v. *Red,* 34 Ky. (4 Dana) 158; *Rice* v. *Thompson,* 53 Ky. (14 B. Mon.) 377, 379. Prior to the Act of 1894, the husband domiciled in Kentucky was entitled to all of his wife's personalty which he had reduced to possession, but he could waive such right and permit her to own and control her personalty as her separate estate. *Boldrick* v. *Mills,* 29 Ky. Law Rep. 852, 96 S. W. 524; *Bohannon* v. *Bohannon's Admx.,* 29 Ky. Law Rep. 143, 92 S. W. 597. It is plain that when the first mortgage was paid and McDonald applied the greater part of plaintiff's one-half interest to the payment of her sister's one-half interest in the second mortgage, and at the time when this was paid by a check to plaintiff, McDonald recog-

nized these funds as his wife's funds. When she turned over the final check to her husband, she did so with the request that he reinvest it at his pleasure, and he promised to do so. She did not intend to make a gift of the funds to him and he did not think it such, nor does the defendant now claim them as a gift. He did not then, nor has he at any time asserted to the plaintiff or anyone else that he regarded these funds, or any investment made with them, as his own property. On the other hand, he made no promise or agreement at the time that he would hold or invest the funds for the plaintiff's special account, or in her name, or in his own name as trustee for her. As long as he lived he exercised complete dominion over them and the investments made with them, and mingled them with his own funds in his own bank account. McDonald referred in his conversations with the plaintiff, particularly after they came to Hartford, to his investments, or to the money going into them, as her property or money, and to his wife's brother he referred to the money he was using for investments as his wife's money; and in 1907 or 1908, having met with serious financial reverses, he several times told the plaintiff that he had robbed her. As to these conversations with the plaintiff and her brother, as well as other conversations with the plaintiff with reference to the making of his will and his having given all to her, from which a reasonable inference might be drawn that the husband then recognized his wife's interest in and title to the investments, in whole or in part, which he was making, the court has found specifically that they "were not directed to or intended as an acknowledgment or statement of legal rights or title in or to the funds in his hands or investments made by him, but were intended to acknowledge the fact of the receipt of the funds from her and her interest in the

property as the means of support of their joint lives while both lived and as her inheritance should she survive him." This specific finding does not purport to find that this husband at any of these conversations asserted his own interest in or title to these investments or their proceeds, or his claim to having reduced her funds received by him to his own possession. Neither does this finding negate the fact that he received these funds from her for investment for her. The finding does not specifically find that McDonald received his wife's funds for investment for her. Upon this point the finding is somewhat variant. Under these circumstances it is permissible to read the finding in the light of the memorandum of the trial court. There we find this statement: "As against this apparent assumption of ownership of the funds, the plaintiff now opposes the fact that, when he first received the funds, she gave them to him to invest for her." So read, the finding must be construed as stating that the plaintiff turned over these funds to her husband to invest for her. If this be the correct construction, he received the funds as trustee for his wife, or as her agent in a fiduciary capacity, and has continued to use them as such trustee or fiduciary agent. The facts found make it quite impossible to infer that McDonald intended to assert his ownership to these funds, or to convert them to his own use, when he received them from his wife. The error of the trial court arose from the emphasis which it placed upon the act of possession or appropriation to the neglect of the other essential factor in a finding of a reduction to possession— the intention of the husband to convert to his own use. If it be said that this intention originated after the possession was acquired, it would be a sufficient answer that the finding is silent as to any such intention; further, the trustee or fiduciary agent could not by his

own act, and without the knowledge of his *cestui que trust,* change the title to the plaintiff's choses in action held by him as trustee or fiduciary agent for her, to himself individually. If it be not permissible to consider the finding as containing the fact that McDonald received these funds for his wife to invest for her, we think a conclusion of this character must be drawn from the subordinate facts found. McDonald did not receive the funds as a gift, nor with the intention of reducing them to his possession, and never claimed to have held the funds for any such purpose. He did receive from his wife these funds upon his express promise to invest them at his pleasure, which must be interpreted to mean according to his best judgment. This, in connection with his own declarations repeated a number of times over a period of years, makes the conclusion that he received these funds for his wife and not for himself the only reasonable conclusion which can be reached upon the finding. If McDonald's domicil was in Massachusetts when these funds were turned over to him, or if it was then in Kentucky, but he never reduced these funds to his possession, they were turned over to him either as trustee of an express trust for the plaintiff, or as her agent in a fiduciary relationship for a specific purpose. *Bohannon* v. *Bohannon's Admx.,* 29 Ky. Law Rep. 143, 92 S. W. 597.

Trusts of personal property may be created verbally, by direct and express statements, or by implication from the circumstances, where the objects and purposes of the transfer may be held to express the true intention of the transferor to be the creation of a trust. 3 Pomeroy's Equity Jurisprudence (4th Ed.) § 1010; *Graham's Admr.* v. *English,* 160 Ky. 375, 379, 169 S. W. 836; *Berry* v. *Norris,* 62 Ky. (1 Duvall) 302, 303; *Bohannon* v. *Bohannon's Admx.,* 29 Ky.

Law Rep. 143, 92 S. W. 598; *Sturtevant* v. *Jaques,* 96 Mass. (14 Allen) 523; *Thacher* v. *Churchill,* 118 Mass. 108.   The transfer of these funds by the plaintiff to her husband created an express trust by implication.   The circumstances which require this conclusion are, in part: The transfer of the plaintiff's inherited property to her husband, not as a gift, but for the specific purpose of having him take care of it and invest it for her at his discretion, coupled with the acceptance of the funds under these conditions, lead to the inference of an express trust, while the subsequent acknowledgment and recognition by the husband that he had in his possession his wife's property and the fact that the husband never repudiated his possession of these funds as belonging to his wife, and at no time claimed them as his own, are strongly evidential that the true intention of the plaintiff in making the transfer was the creation of an express trust.   This conclusion accords with that of the trial court, which expressed the opinion that if the husband did not reduce these funds to his possession, he became a trustee of them for his wife and in that event equity would impress a trust upon them.

If our conclusion that McDonald received and held these funds as an express trust is not supported by the facts found, it must be held that he received them as agent for his wife and in a fiduciary capacity. And whether he received the funds in one capacity or the other is of no essential importance in ascertaining plaintiff's remedy.   In either case, equity will impress a trust upon these funds, provided they can be traced to the property owned by McDonald at his death.   3 Pomeroy's Equity Jurisprudence (4th Ed.) § 1097; *Crandall* v. *Lincoln,* 52 Conn. 73, 101, 109; *Allen* v. *Russell,* 78 Ky. 105.   By tracing the property is included not only the specific property, and the pro-

ceeds of the property so far as it can be identified, but also money which may be traced to any other fund. The majority of the authorities hold that when trust funds have been mingled with the trustee's own funds and drawn against, so that it is impossible to tell whether the trust fund is in the trustee's own funds or not, the trust as applied to these mingled funds ceases, and the equitable right of the *cestui que trust* to follow his funds fails, but if the trust fund can be traced to the common fund, equity may impress upon the common fund a trust in behalf of the *cestui que trust*. In this class of cases the trust fund is held to be somewhere in the common fund. *Connecticut Trust & Safe Deposit Co.* v. *Security Co.*, 67 Conn. 438, 35 Atl. 342; *Mathewson* v. *Wakelee*, 83 Conn. 75, 78, 75 Atl. 93; *Hewitt* v. *Hayes*, 205 Mass. 356, 361, 91 N. E. 332; *Lowe* v. *Jones*, 192 Mass. 94, 101, 78 N. E. 402; *In re Hallett's Estate*, L. R. 13 Ch. Div. 696; *Williams' Admr.* v. *McClanahan*, 60 Ky. (3 Metc.) 420, 423; *Bright* v. *King* (Ky.) 45 S. W. 508; *Old Colony Trust Co.* v. *Puritan Motors Corp.*, 244 Mass. 259, 138 N. E. 321. It has also been held that if the trustee's general estate has been enriched by the proceeds of trust property, the trust cannot be impressed upon the general assets where the estate is insolvent. *Lowe* v. *Jones*, 192 Mass. 94, 100, 78 N. E. 402. The estate of McDonald is solvent, and the balance, after paying creditors and the expenses of administration, is ample to pay the plaintiff's claim in full. Under such circumstances we should feel obliged to consider the right of this plaintiff to follow this trust fund, had not the trial court found that "it is not possible to trace into the securities owned by McDonald at his decease any part of the funds received by him from the plaintiff." This finding prevents the impressment of a trust upon the securities in the hands of the defendant unless it

could be held that the plaintiff, having placed these funds in the hands of her husband in trust to invest for her and he later having mingled them with his own funds, the law would cast upon him the burden of proving that the trust had ceased because he had either used up the funds or so mingled them with his own that it could not be told whether any part of them remained or not, and that in the absence of proof by him of this condition the law would presume that the trust funds formed a part of his general estate. As against a trustee who has breached his trust by mingling the trust funds with his own funds, and he, or his estate, remaining solvent and no rights of creditors in danger of being prejudiced, this conclusion seems to be reasonable as to the trustee, and the only rule which would be just to the *cestui que trust*. We refer to the possible application of this presumption, and omit its further consideration for the reason that we think the plaintiff's rights can be protected without invoking this presumption. The prayer for relief seeks not only to impress a trust upon the securities in the hands of the administrator of this husband, but for an accounting by it for the funds which he as her trustee has had for many years unaccounted for; and, further, she seeks damages. Her claim is not a mere money demand, it is an equitable claim. Her action can be sustained upon either ground—an accounting in behalf of a *cestui que trust,* or the recovery of funds belonging to a *cestui que trust* which the representative of the trustee has failed to pay to her upon her demand. Equity is the proper tribunal in which to enforce the equitable rights of a beneficiary of a trust. *Crandall* v. *Lincoln,* 52 Conn. 73, 108. Equity has either primary or concurrent jurisdiction with law over actions to secure an accounting. *Clement* v. *Brainard,* 46 Conn. 174; *Chamberlain* v. *Connecticut*

*Central R. Co.,* 50 Conn. 472, 9 Atl. 244; *Grand Lodge of Conn.* v. *Grand Lodge of Mass.,* 81 Conn. 189, 70 Atl. 617. Equity may protect the rights of the *cestui que trust* in a proper case for an accounting and require the trustee to account for all the trust property received by him. 2 Perry on Trusts & Trustees (6th Ed.) § 843; 3 Pomeroy's Equity Jurisprudence (4th Ed.) § 1063; *Clark* v. *Isaacs,* 182 Ky. 391, 395, 206 S. W. 606; *Milliken's Exrx.* v. *Enterprise Machine & Garage Co.,* 206 Ky. 78, 81, 266 S. W. 878; *Taft* v. *Stow,* 174 Mass. 171, 174, 54 N. E. 506. A fiduciary relation such as that of a trustee with a duty to account, always gives equity jurisdiction in an action for an accounting against the trustee. 5 Pomeroy, Equitable Remedies (2d Ed.) § 931; *Spear* v. *Coggan,* 223 Mass. 156, 111 N. E. 793. Where the rights of creditors intervene in a case of bankruptcy or insolvency, the beneficiary may not enforce his rights in law or equity to the prejudice of the other creditors. But while the trustee, or his estate, remains solvent there seems to be no difficulty in permitting him to enforce his rights either by legal or equitable remedy, and a bill for an accounting is an appropriate remedy. *Hewitt* v. *Hayes,* 205 Mass. 356, 363, 91 N. E. 332; *Clark* v. *Isaacs, supra.*

If the relation between the plaintiff and her husband as to these funds be held to be that of principal and agent, instead of trustee and *cestui que trust,* it was in that class of agencies whose obligations were wholly fiduciary in character, and as a consequence the husband was in the relation of *quasi*-trustee toward the plaintiff, and since the agency was one where the plaintiff reposed confidence in her husband and the subject-matter of the accounting was within his and not within her knowledge, equity will assume jurisdiction and decree an accounting and adjudge the payment

of the equitable debt arising through the failure of the husband to pay the principal of the fund, together with its increment, or in lieu interest. *Duggan* v. *Wright,* 157 Mass. 228, 232, 32 N. E. 159. Neither the statute of limitations, nor lapse of time, is a bar to the maintenance of this action. The claim, whether arising out of an express trust or the relation of principal and agent, or whether the remedy be to impress a trust, or for an accounting, or a claim for damages, was from its nature an equitable claim, and the remedies sought in this action are all equitable remedies. Against them the statute of limitations does not run so long as either the trust or the fiduciary relationship exists. *New Orleans* v. *Warner,* 175 U. S. 120, 130, 20 Sup. Ct. 44; 4 Pomeroy's Equity Jurisprudence (4th Ed.) § 1449; *Rockwell* v. *New Departure Mfg. Co.,* 102 Conn. 255, 302, 128 Atl. 302. Upon the facts, there is no basis for the claim that there had been an extinguishment of the claim by lapse of time, since the plaintiff was in ignorance of the position of the defendant until after McDonald died, and thus there is no occasion to consider further that question.

We pass to the question whether the plaintiff has lost her right to recover the amount of this trust fund through her failure to present her claim to the administrator within the time limited by the Court of Probate for the presentation of all claims. It was decided in *State* v. *Osborne,* 69 Conn. 257, 262, 37 Atl. 491— an action upon the bond of an administrator—that a claim for the wrongful disposition of trust property by the administrator is a claim upon the estate like that of any other creditor. We did not intend by this to imply that the jurisdiction of the Court of Probate was exclusive over a claim which properly came within any of the recognized subjects of equitable jurisdiction, and whose ascertainment, protection, or enforcement, fell

within any equitable remedy. Whatever jurisdiction over such claims has been given by statute to the Court of Probate is concurrent with that of our general court of equity unless the statute has plainly expressed a contrary purpose. Our Courts of Probate must find all of their powers in the statute; they have no general chancery jurisdiction. They possess only those chancery powers which are incidental to the settlement of an estate and are necessary for the adjustment of the equitable rights before the court. *Vail's Appeal,* 37 Conn. 185, 195. In certain cases power is given to the Court of Probate to appoint trustees; we have held that this does not deprive our court of equity of its general power to appoint trustees. Similarly, we point out in *Preston* v. *Preston,* 102 Conn. 96, 121, 128 Atl. 292, and *DeLadson* v. *Crawford,* 93 Conn. 402, 405, 106 Atl. 326, that the jurisdiction of the Court of Probate over testamentary trusts is exclusively statutory and very limited and has not taken away the general jurisdiction of the court of equity. In *Connecticut Trust & Safe Deposit Co.* v. *Security Co.,* 67 Conn. 438, 35 Atl. 342, the action was one to recover damages for the refusal of defendant to turn over a trust fund which had come into its hands from its decedent and which had been so mingled by the trustee with decedent's own funds that it was not capable of being separately traced and identified. The action was one of law. Defendant claimed that the plaintiff was not entitled to recover because it neglected to present its claim against decedent's solvent estate within the time limited by the Court of Probate. In denying this claim we observed (p. 444): "It [the claim of plaintiff] is a claim for trust assets, in the hands of the trustee of an express trust. . . . It is a suit against the administrator of a person who, up to the time of his death, held personal property as the statutory

trustee—not as the administrator of his wife—who had refused to deliver it upon demand, to her administrator, in order that it might be administered upon and finally disposed of according to law." The case determined that an action may be brought against the estate of the decedent when the trust fund is a part of the estate but is so mingled with the decedent's funds that it cannot be separated. In that case a trust could have been impressed upon the estate to the amount of the trust fund. We did not stop to consider the form of the action—one of law; the case was in a court which administered both legal and equitable relief and the subject-matter was that of equity. In this case the action prays for the impressment of a trust upon property in the hands of the administrator of the deceased trustee and for an accounting of a trust fund which the trustee so mingled with his own that it cannot be traced to the assets of the trustee which came to his administrator. The questions necessarily involved are exceedingly difficult of solution; though the Court of Probate had jurisdiction concurrent with our court of equity, the latter court was the only court which could properly consider and determine the claim, whether or not plaintiff was entitled to impress a trust upon all of the securities remaining in the hands of the administrator, or if not, to recover the face of the trust fund with its increment, or in lieu of that, interest either compound, or with stated rests, or simple. Claims of the character of that before us are not properly within the jurisdiction of the Court of Probate. Courts have sometimes required the trustee or his estate, when funds received by the trustee had by him been mingled with his own funds so that the trust fund could not be traced to assets or funds in his hands or in his estate, to pay compound interest, sometimes interest at stated inter-

vals, and sometimes simple interest. Where there has been no wilful or fraudulent mingling of the funds, no intention by the trustee to claim the funds as his own, and no such claim ever made by him, but the mingling was either the result of mere thoughtlessness, or from a desire more conveniently to administer the trust fund, and where this is done by a husband for his wife, it does not present a case which requires a judgment for more than the allowance of simple interest upon the principal of the fund found due. This describes the situation in this case. McDonald did not intend to wrong his wife; the judgment which we render may not give to the wife as much of her husband's estate as he desired to give her, but it is all that the law can allow upon the facts of record. We entirely agree with the trial court that the equities in this case strongly incline in favor of this plaintiff.

There is error; the Superior Court in Hartford County is directed to render its judgment under prayers of relief one and three for the plaintiff to recover $5,100, with interest from April 19th, 1890

In this opinion the other judges concurred.